ACCEPTED
15-25-00112-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
7/2/2025 4:39 PM
CHRISTOPHER A. PRINE
CLERK

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
7/2/2025 4:39:56 PM
CHRISTOPHER A. PRINE
Clerk



July 2, 2025

Hon. Christopher A. Prine
Clerk, Texas Fifteenth Court of Appeals
P.O. Box 12852
Austin, Texas 78711

> Re:   Court of Appeals No. 15-25-00111-CV, *Pecos Housing Finance Corporation, Pleasanton Housing Finance Corporation, Maverick Housing Finance Corporation, and La Villa Housing Finance Corporation v. City of Arlington*
>
> Court of Appeals No. 15-25-00112-CV, *Pecos Housing Finance Corporation, a Texas Nonprofit Corporation and Cara Turn, Maribel Alvarez, and Irene Dominguez, in Their Official Capacities as Board Members of Pecos Housing Finance Corporation v. City of Haltom City, Texas*

Dear Ms. Prine:

Appellants provide the following response to this Court's June 25 letter requesting information pertaining to its jurisdiction over these appeals.[1]

## A. Background

Appellant Pecos Housing Finance Corporation ("Pecos") is a housing finance corporation ("HFC") established to coordinate and facilitate affordable housing for Texas residents, pursuant to the Housing Finance Corporation Act, TEX. LOC. GOV'T CODE § 394.001 *et seq.* ("the Act"). Pecos serves a "public purpose" and "performs an essential governmental function on behalf of and for the benefit of … this State." *Id.* at § 394.002(c)(1)-(3). To fulfill this purpose, HFCs like Pecos enter into public-private real estate partnerships to facilitate the development of low-income housing within the

---

[1] Appellants intend to file a motion to consolidate these appeals, along with No. 15-25-00113-CV, pending this Court's jurisdictional determination.

"local government," and as a result, HFC-owned properties and the income derived therefrom are tax-exempt. *Id.* at § 394.903(a); § 394.905.[2]

The orders challenged in these appeals resulted from efforts by three municipalities – Fort Worth, Arlington, and Haltom City – to prevent Pecos and other so-called "traveling HFCs" from operating within these cities, which they describe as "a widespread problem across the state" that has led to "the loss of millions of dollars in real property value from the local tax base."[3] According to Appellees, the Act limits Pecos and other HFCs to operating only within the boundaries of the local governments that approve the incorporation of the HFC; and to the extent the Act permits an HFC to operate outside these boundaries, it is unconstitutional. Appellants assert that HFCs may operate outside the boundaries of their sponsoring governments under the unambiguous language of the Act. The trial court temporarily enjoined Pecos from purchasing or approving the purchase of real property within these cities' boundaries, or requesting, approving, or obtaining tax exemptions for any real property located within these cities' boundaries. These orders are before this Court, along with the trial court's denials of Appellants' pleas to the jurisdiction.

Notably, these are just two of at least fourteen similar lawsuits pending across the state, implicating the jurisdiction of no fewer than five regional intermediate courts of appeal. *See*, *e.g.*, *City of Euless v. Cameron County Housing Finance Corp., Mark A. Yates, Gavino Sotelo, Eduardo Campirano, Louie Tijerina, and Cyndi Wyche, in their Official Capacities as Board Members of the Cameron County Housing Finance Corp., and Tarrant Appraisal District*, **Cause No. 348-365230-25**, pending in the 236th Judicial District of Tarrant County; *Harris County Municipal Utility Dist. No. 390 v. Pleasonton Housing Finance Corp. and Roland Altinger, in his Official Capacity as Chief Appraiser of the Harris Central Appraisal District*, **Cause No. 2025-33133**, pending in the 165th Judicial District of Harris County; *City of San Marcos and Hays County, Texas v. Pecos Housing Finance Corp. and Pleasonton Housing Finance Corp.*, **Cause No. 25-1185-DCB**, pending in the 207th Judicial District of Hays County; *Williamson County, Siena Municipal Utility Dist. No. 1 and Siena Municipal Utility Dist. No. 2 v. Cameron County Housing Finance Corp.*, **Cause No. 25-0488-C425**, pending in the 425th Judicial District of Williamson County; *City of Missouri City v. Pleasonton*

---

[2] On May 28, 2025, Gov. Greg Abbott signed HB 21 into law, amending the Act effective immediately. *See* Housing Finance Corporations; Authorizing a Fee, 2025 Tex. Sess. Law Serv. Ch. 208 (H.B. 21) (VERNON'S), attached hereto as Exhibit A. The properties at issue in these appeals were acquired prior to these amendments.

[3] *See Plaintiff City of Arlington's Third Amended Petition and Application for Temporary Restraining Order and Injunction Relief*, at 1, 5 (Exhibit B); *City of Fort Worth's Fourth Amended Petition in Intervention and Application for a Temporary Restraining Order and Injunctive Relief*, at 2, 7 (Exhibit C); *[Haltom City's] First Amended Application for Temporary Injunction and Response to Defendants' Plea to the Jurisdiction*, at 1, 7 (Exhibit D).

*Housing Finance Corp. and Board Members of the Pleasanton Housing Finance Corp in their Official Capacities*, **Cause No. 25-DCV-328899**, pending in the 240th Judicial District of Fort Bend County; *City of Missouri City, Texas v. Maverick County Housing Finance Corp. ad the Borad Members of the Maverick County Housing Finance Corp. in their Official Capacities*, **Cause No. 25-DCV-325392**, pending in the 268th Judicial District of Fort Bend County; *City of Lewisville v. Cameron County Housing Finance Corp., Pecos Housing Finance Corp., and Don Spencer, in his Official Capacity as Chief Appraiser of the Denton County Tax Appraisal Dist.*, **Cause No. 25-4665-367**, pending in the 367th Judicial District of Denton County, Texas; *Town of Little Elm v. Pleasonton HFC, Pecos HFC, Don Spencer in is Official Capacity as Chief Appraiser of Denton County Appraisal District*, **Cause No. 25-5634-367**, pending in the 367th Judicial District of Denton County; *City of Carrollton v. Pecos Housing Finance Corp., Shane Docherty, in his Official Capacity as Chief Appraiser of the Dallas Central Appraisal Dist.*, **Cause No. DC-25-07935**, pending in the 101st Judicial District of Dallas County; *City of Rowlett and Garland Indep. Sch. Dist. v. Pleasonton Housing Finance Corp.*, **Cause No. DC-25-077781**, pending in the 191st Judicial District of Dallas County; *City of Richardson v. Collin Central Appraisal Dist., Garland Housing Finance Corp., and Cameron County Housing Finance Corp.*, **Cause No. 219-03593-2025**, pending in the 219th Judicial District of Collin County; *Montgomery County Municipal Utility Dist. No. 46 v. Maverick County Housing Finance Corp.*, **Cause No. 25-06-09304**, pending in the 284th Judicial District of Montgomery County.

## B. These appeals are brought by or against the state or a board, commission, department, office, or other agency in the executive branch of the state government.

The Fifteenth Court of Appeals has exclusive intermediate appellate jurisdiction over civil matters brought by or against the state or a board, commission, department, office, or other agency in the executive branch of the state government … TEX. GOV'T CODE § 22.220(d)(1).

The Texas Supreme Court recently addressed the scope of this provision in *Baumgardner v. Brazos River Auth.*, 2025 WL 1779081 *1 (Tex. June 27, 2025). Finding the river authority to be a political subdivision[4] rather than a state agency, the Court determined the appeal did not fall within this Court's exclusive jurisdiction. *Id.* at *3-5. Key to the Court's holding was the limited geographic reach of the river authority. *Id.* at *3, 5. Citing *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 940 (Tex.

---

[4] Although considered political subdivisions, this Court has exercised jurisdiction over appeals brought by or against municipalities. *See, e.g.*, *City of Austin v. Mario Ponce et al.*, Case No. 15-24-00076; *City of Rio Vista v. Johnson County Special Utility District*, Case No. 15-24-00065-CV.

1993), the Court observed "[a] political subdivision has jurisdiction over a portion of the State; a department, board or agency of the State exercises its jurisdiction throughout the State." *Baumgardner*, 2025 WL 1779081 *5. Although HFCs are created by local government, TEX. LOC. GOV'T CODE § 394.002(d), at all times relevant to these appeals there was no limit to the geographic reach of their operations. *See also* TEX. GOV'T CODE § 394.002(b)(1) ("the creation of a housing finance corporation is for the benefit of the people of the state, …"). Moreover, HFCs are empowered to delegate to the Texas Department of Housing and Community Affairs (indisputably a state agency) the authority to act on its behalf in the financing, refinancing, acquisition, leasing, ownership, improvement, and disposal of home mortgages or residential developments, making HFCs more akin to a state agency than a political subdivision. *Id.* at § 394.032(e).

### C. This Court has jurisdiction to consider these appeals "as provided by law."

This Court also has jurisdiction over any other matter as provided by law. TEX. GOV'T CODE § 22.220(d)(2). As the Texas Supreme Court made clear in *In re Dallas Cnty.*, 697 S.W.3d 142, 146 (Tex. 2024) and *Kelley v. Homminga*, 706 S.W.3d 829, 834 (Tex. 2025), this Court was created to adjudicate matters that implicate, or that the Legislature has defined as critical to, the State's interests. The Legislature was clear on the importance of HFCs to achieving the goal of providing low-income housing to Texans: "the corporation, as a public instrumentality and nonprofit corporation, performs an <u>essential government function</u> on behalf of and for the benefit of the general public, the local government, and <u>this state</u>." TEX. LOC. GOV'T CODE § 394.002(c)(3) (emphasis added). There can be no question that Pecos's alleged "misuse and abuse" of the Texas Housing Finance Corporation Act is a matter that is critical to the State's interests within the common-law holding of *Kelley*. *See* Exhs. B-D.

Moreover, as noted *supra*, similar lawsuits are pending across the state. Those appeals should be heard by the same intermediate court of appeals as a matter of judicial economy. This, too, was a justification for the establishment of this Court: "[u]nder the current judicial system, appeals in cases of statewide significance are decided by one of Texas's 14 intermediate appellate courts. These courts have varying levels of experience with the complex legal issues involved in cases of statewide significance, resulting in <u>inconsistent results for litigants</u>. …" *See* Senate Research Center, Bill Analysis, Tex. S.B. 1045, 88th Leg., R.S. (2023) (discussing background of the bill) (emphasis added).

**D. These appeals are matters in which a party to the proceeding has challenged the constitutionality of a state statute.**

Finally, this Court has jurisdiction over matters in which a party to the proceeding files a petition, motion, or other pleading challenging the constitutionality or validity of a state statute or rule and the attorney general is a party to the case. TEX. GOV'T CODE § 22.220(d)(2).

Appellee City of Fort Worth has alleged that, to the extent Pecos's actions are authorized by the Act, the Act violates Article VIII Section 11 of the Texas Constitution. *See* Exhibit C at 9. It also seeks a declaratory judgment that Article VIII, Section 11 of the Texas Constitution "limits counties' ad valorem taxation authority to 'property within their respective boundaries' and that Defendants' scheme violates Constitutional limits on the scope of Texas counties' taxing authority." *Id.* at 9-10. Appellee Haltom City has similarly alleged that Pecos's actions (which were authorized by the Act) "violate the Texas Constitution's rules against extra-jurisdictional taxation by seeking to impose a system of taxation on properties located outside the boundaries of Reeves County where Pecos City is located." *See* Exhibit D at 12. Haltom City further alleges that "[i]f [the Act] could be read to empower Pecos HFC to take properties outside of Reeves County off the tax rolls of other counties, this would violate the Texas Constitution's limits on the scope of Texas counties' taxing authority." *Id.*

On June 30, 2025 this Court notified the Office of the Attorney General of these Constitutional challenges. To the extent this Court determines that it does not have jurisdiction pursuant to TEX. GOV'T CODE § 22.220(d)(1) or (d)(3), Appellants respectfully request that the Court await the Attorney General's decision whether to join this appeal before ruling on its jurisdiction.

Thank you for your attention to this matter.

Respectfully Submitted:


/s/ Amanda L. Reichek
Jeffrey M. Tillotson
Texas Bar No. 20039200
jtillotson@tillotsonlaw.com
Amanda L. Reichek
Texas Bar No. 24041762
areichek@tillotsonlaw.com
Kathryn E. Yukevich
State Bar No. 24133390
kyukevich@tillotsonlaw.com
TILLOTSON JOHNSON & PATTON
1201 Main Street, Suite 1300
Dallas, Texas 75202
Telephone: (214) 382-3041
Facsimile: (214) 292-6564

Blake W. Stribling
Texas Bar No. 24070691
bstribling@chasnoffstribling.com
Daniel J. Lecavalier
Texas Bar No. 24129028
dlecavalier@chasnoffstribling.com
CHASNOFF STRIBLING, LLP
1020 N.E. Loop 410, Suite 150
San Antonio, Texas 78209
Telephone: (210) 469-4155

**ATTORNEYS FOR APPELLANT
PECOS HOUSING FINANCE
CORPORATION**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served by email to counsel herein on July 2, 2025.

/s/ *Amanda L. Reichek*
Amanda L. Reichek

# EXHIBIT A

2025 Tex. Sess. Law Serv. Ch. 208 (H.B. 21) (VERNON'S)

VERNON'S TEXAS SESSION LAW SERVICE 2025

Eighty-Ninth Legislature, 2025 Regular Session

Additions are indicated by **Text**; deletions by ~~Text~~ .
Vetoes are indicated by ~~Text~~ ;
stricken material by ~~Text~~ .

CHAPTER 208

H.B. No. 21

HOUSING FINANCE CORPORATIONS; AUTHORIZING A FEE

AN ACT
relating to housing finance corporations; authorizing a fee.

Be it enacted by the Legislature of the State of Texas:

SECTION 1. Section 394.004, Local Government Code, is amended to read as follows:

<< TX LOCAL GOVT § 394.004 >>

Sec. 394.004. APPLICATION OF CHAPTER TO CERTAIN RESIDENTIAL DEVELOPMENTS. This chapter applies only to a residential development at least 90 percent of which is for use by or is intended to be occupied by **households** [~~persons~~ ] of low and moderate income whose adjusted gross income [~~, together with the adjusted gross income of all persons who intend to reside with those persons in one dwelling unit,~~ ] did not for the preceding tax year exceed the maximum amount constituting moderate income **as defined** under the housing finance corporation's rules, resolutions relating to the issuance of bonds, or financing documents relating to the issuance of bonds.

SECTION 2. Subchapter A, Chapter 394, Local Government Code, is amended by adding Section 394.0045 to read as follows:

<< TX LOCAL GOVT § 394.0045 >>

**Sec. 394.0045. APPLICABILITY OF OPEN MEETINGS AND OPEN RECORDS LAWS. (a) Chapter 551, Government Code, applies to actions and proceedings under this chapter.**

**(b) Chapter 552, Government Code, applies to all records of a housing finance corporation.**

SECTION 3. The heading to Section 394.031, Local Government Code, is amended to read as follows:

<< TX LOCAL GOVT § 394.031 hd. >>

Sec. 394.031. EXERCISE OF POWERS**; AREA OF OPERATION**.

SECTION 4. Section 394.031, Local Government Code, is amended by adding Subsections (c), (d), and (e) to read as follows:

<< TX LOCAL GOVT § 394.031 >>

(c) Subject to Subsection (d), the area in which a housing finance corporation may own real property for residential development or engage in residential development is limited to:

(1) for a housing finance corporation sponsored by a municipality under Section 394.011, the boundaries of the municipality that sponsored the corporation;

(2) for a housing finance corporation sponsored by a county under Section 394.011, the boundaries of the county that sponsored the corporation; or

(3) for a housing finance corporation sponsored by more than one local government under Section 394.012:

(A) the boundaries of each municipal sponsor of the corporation; and

(B) the boundaries of each county sponsor of the corporation.

(d) A housing finance corporation may own real property for residential development or engage in residential development outside an area described by Subsection (c) only if a resolution or order, as applicable, approving that ownership or development in the outside area is adopted by the governing bodies of:

(1) each municipality that contains any part of the outside area in which the corporation proposes to own real property for residential development or engage in residential development;

(2) for a residential development or home located in the unincorporated area of a county, each county that contains any part of the outside area in which the corporation proposes to own real property for residential development or engage in residential development; and

(3) any housing finance corporation sponsored by a municipality or county described by Subdivision (1) or (2), as applicable.

(e) This section does not prohibit or limit a housing finance corporation from owning real property outside an area described by Subsection (c) or (d) if the property is not owned for purposes of residential development.

SECTION 5. Section 394.032(e), Local Government Code, is amended to read as follows:

<< TX LOCAL GOVT § 394.032 >>

(e) A housing finance corporation may delegate to the Texas Department of Housing and Community Affairs the authority to act on its behalf in the financing, refinancing, acquisition, leasing, ownership, improvement, and disposal of home mortgages or residential developments, [within and outside the jurisdiction of the housing finance corporation, ] including its authority to issue bonds for those purposes.

SECTION 6. Section 394.037, Local Government Code, is amended by adding Subsection (a–1) to read as follows:

<< TX LOCAL GOVT § 394.037 >>

(a–1) A housing finance corporation may issue bonds under this chapter for a purpose described by Subsection (a) only to finance or support a residential development or home that is located or will be constructed:

(1) within the boundaries of a local government in which a housing finance corporation is permitted to own real property for residential development or engage in residential development under Section 394.031(c); or

(2) outside the boundaries of a local government described by Subdivision (1) if a resolution or order, as applicable, approving the issuance of bonds is adopted by the governing body of:

(A) each municipality that contains any part of the residential development or home; and

(B) for a residential development or home located in the unincorporated area of a county, each county that contains any part of the residential development or home.

SECTION 7. Section 394.039, Local Government Code, is amended to read as follows:

<< TX LOCAL GOVT § 394.039 >>

Sec. 394.039. SPECIFIC POWERS RELATING TO FINANCIAL AND PROPERTY TRANSACTIONS. **Subject to Sections 394.031(c), (d), and (e), a** [A ] housing finance corporation may:

(1) lend money for its corporate purposes, invest and reinvest its funds, and take and hold real or personal property as security for the payment of the loaned or invested funds;

(2) mortgage, pledge, or grant security interests in any residential development, home mortgage, note, or other property in favor of the holders of bonds issued for those items;

(3) purchase, receive, lease, or otherwise acquire, own, hold, improve, use, or deal in and with real or personal property or interests in that property, [wherever the property is located, ] as required by the purposes of the corporation or as donated to the corporation; and

(4) sell, convey, mortgage, pledge, lease, exchange, transfer, and otherwise dispose of all or part of its property and assets.

SECTION 8. Section 394.9025, Local Government Code, is amended to read as follows:

<< TX LOCAL GOVT § 394.9025 >>

Sec. 394.9025. MULTIFAMILY RESIDENTIAL DEVELOPMENT. (a) Following a public hearing **by the governing body of the applicable local government**, a housing finance corporation may, **subject to the geographic limitations of Section 394.037(a–1),** issue bonds to finance a multifamily residential development to be owned by the housing finance corporation if:

(1) at least 50 percent of the units in the multifamily residential development are reserved for occupancy by individuals and families earning less than 80 percent of the area median family income; **or**

**(2) the units in the multifamily residential development are reserved in the manner provided by Section 394.9026(c)(1).**

(b) Following a public hearing by the governing body of the **applicable** local government, a housing finance corporation may, **subject to the geographic limitations of Section 394.037(a–1),** issue bonds to finance a multifamily residential development to be owned by the housing finance corporation in accordance with Section 394.004 if the housing finance corporation receives approval of the governing body of the local government.

SECTION 9. Subchapter Z, Chapter 394, Local Government Code, is amended by adding Sections 394.9026 and 394.9027 to read as follows:

<< TX LOCAL GOVT § 394.9026 >>

**Sec. 394.9026. ADDITIONAL CONDITIONS FOR BENEFICIAL AD VALOREM TAX TREATMENT RELATING TO CERTAIN MULTIFAMILY RESIDENTIAL DEVELOPMENTS. (a)** In this section:

(1) "Housing choice voucher program" means the housing choice voucher program under Section 8, United States Housing Act of 1937 (42 U.S.C. Section 1437f).

(2) "Housing finance corporation user" means:

(A) a housing finance corporation; or

(B) for a multifamily residential development that is not owned directly by a housing finance corporation, a public-private partnership entity or a developer or other person or entity that has an ownership interest or a leasehold or other possessory interest in multifamily residential development financed or supported by a housing finance corporation.

(3) "Lower income housing unit" means a residential unit reserved for occupancy by an individual or family earning not more than 60 percent of the area median income, adjusted for family size, as defined by the United States Department of Housing and Urban Development.

(4) "Maximum market rent" means, with respect to a particular income-restricted unit, the average annual rent charged for all non-income-restricted units in the development having the same or substantially similar floor plan as the income-restricted unit.

(5) "Middle income housing unit" means a residential unit reserved for occupancy by an individual or family earning not more than 100 percent of the area median income, adjusted for family size, as defined by the United States Department of Housing and Urban Development.

(6) "Moderate income housing unit" means a residential unit reserved for occupancy by an individual or family earning not more than 80 percent of the area median income, adjusted for family size, as defined by the United States Department of Housing and Urban Development.

(7) "Multifamily residential development" means any residential development consisting of four or more residential units intended for occupancy as rentals, regardless of whether the units are attached or detached.

(8) "Rent" means any recurring fee or charge a tenant is required to pay as a condition of occupancy, including a fee or charge for the use of a common area or facility reasonably associated with residential rental property. The term does not include fees and charges for services or amenities that are optional for a tenant, such as pet fees and fees for storage or covered parking.

(9) "Rent reduction" means the projected difference between the rent charged for an income-restricted unit and the maximum market rent that could be charged for that same unit without the income restrictions.

(10) "Very low income housing unit" means a residential unit reserved for occupancy by an individual or family earning not more than 50 percent of the area median income, adjusted for family size, as defined by the United States Department of Housing and Urban Development.

(b) This section does not apply to a multifamily residential development that is the recipient of a low income housing tax credit allocated under Subchapter DD, Chapter 2306, Government Code.

(c) Subject to Subsection (g), an ad valorem tax exemption under Section 394.905 for a multifamily residential development owned by a housing finance corporation is available only if the other requirements of this chapter are satisfied and if:

(1) at least:

(A) 10 percent of the units in the development are reserved for occupancy as lower income housing units and at least 40 percent of the units in the development are reserved for occupancy as moderate income housing units; or

(B) 10 percent of the units in the development are reserved for occupancy as very low income housing units and at least 40 percent of the units in the development are reserved for occupancy as middle income housing units;

(2) the rent reduction at the development in the preceding tax year was:

(A) not less than 50 percent of the amount of the estimated ad valorem taxes that would have been imposed on the applicable property in the same preceding tax year if the property did not receive an exemption from those taxes under Section 394.905, beginning with:

(i) for a multifamily residential development that is acquired by the corporation, the first tax year after the tax year that the corporation acquires the development; and

(ii) for a newly constructed multifamily residential development not described by Subparagraph (i), the first tax year after the tax year in which construction first begins on the development; or

(B) less than 50 percent of the amount of the estimated ad valorem taxes described by Paragraph (A) beginning with the tax year specified by that paragraph, but the housing finance corporation user paid to each taxing unit authorized to impose ad valorem taxes on the applicable property for the applicable tax year an amount equal to that taxing unit's pro rata share of the rent reduction shortfall that exists based on the difference between the minimum rent reduction amount described by Paragraph (A) and the amount of actual rent reduction at the development in the preceding tax year;

(3) the income-restricted residential units in the development have the same unit finishes and equipment and access to community amenities and programs as residential units that are not income-restricted;

(4) the percentage of very low, lower, moderate, and middle income housing units reserved in each category of income-restricted residential units in the development, based on the number of bedrooms per unit, is the same as the percentage of each category of income-restricted residential units reserved in the development as a whole;

(5) the monthly rent charged per unit does not exceed:

(A) for a very low income housing unit, 30 percent of 50 percent of the area median income, adjusted for family size, as defined by the United States Department of Housing and Urban Development;

(B) for a lower income housing unit, 30 percent of 60 percent of the area median income, adjusted for family size, as defined by the United States Department of Housing and Urban Development;

(C) for a moderate income housing unit, 30 percent of 80 percent of the area median income, adjusted for family size, as defined by the United States Department of Housing and Urban Development; or

(D) for a middle income housing unit, 30 percent of 100 percent of the area median income, adjusted for family size, as defined by the United States Department of Housing and Urban Development;

(6) the housing finance corporation user and the development do not:

(A) refuse to rent a residential unit in the development to an individual or family because the individual or family participates in the housing choice voucher program; or

(B) use a financial or minimum income standard that requires an individual or family participating in the housing choice voucher program to have a monthly income of more than 250 percent of the individual's or family's share of the total monthly rent payable for a unit;

(7) the housing finance corporation user causes to be published on the Internet website of the development information about the development's policies regarding tenant participation in the housing choice voucher program;

(8) the housing finance corporation user for the development:

(A) affirmatively markets available residential units directly to individuals and families participating in the housing choice voucher program; and

(B) notifies local housing authorities of the development's acceptance of tenants in the housing choice voucher program; and

(9) each lease agreement for an income-restricted residential unit in the development provides that:

(A) the landlord may not retaliate against the tenant or the tenant's guests by taking an action because the tenant established, attempted to establish, or participated in a tenant organization;

(B) the landlord may only choose to not renew the lease if the tenant:

(i) committed one or more substantial violations of the lease;

(ii) failed to provide required information on the income, composition, or eligibility of the tenant's household; or

(iii) committed repeated minor violations of the lease that disrupt the livability of the property, adversely affect the health and safety of any person or the right to quiet enjoyment of the leased premises and related development facilities, interfere with the management of the development, or have an adverse financial effect on the development, including the failure of the tenant to pay rent in a timely manner; and

(C) to not renew the lease, the landlord must serve a written notice of proposed nonrenewal on the tenant not later than the 30th day before the effective date of nonrenewal.

(d) In calculating the income of an individual or family for a very low, lower, moderate, or middle income housing unit, the housing finance corporation user must use the definition of annual income described in 24 C.F.R. Section 5.609, as implemented by the United States Department of Housing and Urban Development. If the income of a tenant exceeds an applicable limit at the time of the renewal of a lease agreement for a residential unit, the provisions of Section 42(g)(2)(D), Internal Revenue Code of 1986, apply in determining whether the unit may still qualify as a very low, lower, moderate, or middle income housing unit.

(e) A housing finance corporation user may require an individual or family participating in the housing choice voucher program to pay the difference between the monthly rent for the applicable unit and the amount of the monthly voucher if the amount of the voucher is less than the rent.

(f) A tenant may not waive the protections provided by Subsection (c)(9). A housing finance corporation user may adopt tenant protections that are more protective of tenants than the tenant protections provided by Subsection (c)(9).

(g) A multifamily residential development that is acquired by a housing finance corporation and is occupied on the date of the acquisition is eligible for an ad valorem exemption under Section 394.905 for the two tax years following the date of the acquisition, regardless of whether the development complies with the conditions prescribed by Subsections (c)(1),

(3), (4), and (5), if the development comes into compliance with Subsections (c)(1), (3), (4), and (5) not later than the end of the second tax year after the date of the acquisition.

<< TX LOCAL GOVT § 394.9027 >>

Sec. 394.9027. AUDIT REQUIREMENTS FOR CERTAIN MULTIFAMILY RESIDENTIAL DEVELOPMENTS. (a) In this section:

(1) "Department" means the Texas Department of Housing and Community Affairs.

(2) "Housing finance corporation user" has the meaning assigned by Section 394.9026.

(b) A housing finance corporation or housing finance corporation user that claims an ad valorem tax exemption for a multifamily residential development under Section 394.905 must annually submit to the department an audit report for a compliance audit, prepared at the expense of the housing finance corporation user and conducted by an independent auditor or compliance expert with an established history of providing similar audits on housing compliance matters, that:

(1) states whether the corporation is in compliance with the requirements imposed for the exemption by Section 394.9026; and

(2) identifies the difference in the rent charged for income-restricted residential units and the estimated maximum market rents that could be charged for those units without the income restrictions.

(c) Not later than the 60th day after the date of receipt of the audit conducted under Subsection (b), the department shall examine the audit report and publish a report summarizing the findings of the audit. The report must:

(1) be made available on the department's Internet website;

(2) be issued to the housing finance corporation that owns or is associated with the development that is the subject of an audit, the housing finance corporation user of the development, the comptroller, and the governing body of the sponsoring local government or governments of the housing finance corporation; and

(3) describe in detail the nature of any failure to comply with the requirements of Section 394.9026.

(d) If an audit report submitted under Subsection (b) indicates noncompliance with Section 394.9026, a housing finance corporation user, the associated housing finance corporation, and the chief appraiser of the appraisal district in which the development is located must be given written notice from the department that is provided not later than the 120th day after the date a report has been submitted under Subsection (b) and specifies the reasons for noncompliance. For a finding of noncompliance with any provision of Section 394.9026(c), a housing finance corporation user and the associated housing finance corporation must be given:

(1) additional written notice that:

(A) otherwise complies with the notice requirements of this section;

(B) contains at least one option for a corrective action to resolve the noncompliance; and

(C) informs the housing finance corporation user and associated housing finance corporation that failure to resolve the noncompliance within the period provided by Subdivision (2) will result in the loss of the ad valorem tax exemption under Section 394.905;

(2) a period of 180 days after the date notice is received under Subdivision (1) to resolve the matter that is the subject of the notice; and

(3) if a matter that is the subject of a notice provided under this subdivision is not resolved to the satisfaction of the department during the period provided by Subdivision (2), a second notice that informs the housing finance corporation of the loss of the ad valorem tax exemption for the development due to noncompliance with Section 394.9026.

(e) The initial audit report required by Subsection (b) is due not later than June 1 of the tax year following:

(1) the date of acquisition for an existing multifamily residential development that is acquired by a housing finance corporation; or

(2) the date a newly constructed multifamily residential development first becomes occupied by one or more tenants.

(f) Subsequent audit reports following the issuance of the initial audit report under Subsection (e) are due not later than June 1 of each year.

(g) The department may extend the deadline for submitting any audit required under this section for good cause shown, as determined by the department.

(h) An independent auditor or compliance expert may not prepare an audit under Subsection (b) for more than three consecutive tax years for the same housing finance corporation. After the third consecutive audit, the independent auditor or compliance expert may prepare an audit only after the second anniversary of the preparation of the third consecutive audit.

(i) The department:

(1) shall adopt forms and reporting standards for the auditing process;

(2) may charge a fee for the submission of an audit report under this section in a reasonable amount necessary to cover the expenses of administering this section; and

(3) shall adopt rules necessary to implement this section and Section 394.9026.

(j) Rules adopted under Subsection (i)(3) must include administrative processes and a process by which a housing finance corporation user may appeal a finding of noncompliance made under this section or a loss of a tax exemption due to a finding of noncompliance with Section 394.9026 or any other provision of this chapter.

(k) An audit conducted under Subsection (b) is subject to disclosure under Chapter 552, Government Code, except that information containing tenant names, unit numbers, or other tenant identifying information may be redacted.

(*l*) This section does not apply to a multifamily residential development during any period that the development is the recipient of a low income housing tax credit allocated under Subchapter DD, Chapter 2306, Government Code.

SECTION 10. Section 394.903, Local Government Code, is amended to read as follows:

<< TX LOCAL GOVT § 394.903 >>

Sec. 394.903. **TRANSFER** [~~LOCATION~~ ] OF [~~RESIDENTIAL DEVELOPMENT;~~ ] RESIDENTIAL DEVELOPMENT SITES. **Subject to Sections 394.031(c) and (d), a** [~~(a) A residential development covered by this chapter must be located within the local government.~~

[~~(b) The~~ ] local government may transfer any residential development site to a housing finance corporation by sale or lease. The governing body of the local government may authorize the transfer by resolution without submitting the issue to the voters and without regard to the requirements, restrictions, limitations, or other provisions contained in any other general, special, or local law. [~~The site may be located wholly or partly inside or outside the local government.~~ ]

SECTION 11. Section 394.905, Local Government Code, is amended to read as follows:

<< TX LOCAL GOVT § 394.905 >>

Sec. 394.905. EXEMPTION FROM **TAXES AND FEES** [~~TAXATION~~ ]. **(a) Subject to compliance with the requirements of this chapter, a** [~~The~~ ] housing finance corporation **and**[~~,~~ ] all property owned by **the corporation** [~~it~~ ], the income from **that** [~~the~~ ] property, all bonds issued by **the corporation** [~~it~~ ], the income from **those** [~~the~~ ] bonds, and the transfer of **those** [~~the~~ ] bonds are exempt, as public property used for public purposes, from license fees, recording fees, and all other taxes imposed by this state or any political subdivision of this state.

**(b) A multifamily residential development owned by a housing finance corporation is eligible for an exemption from ad valorem taxes, and the materials used to improve the applicable property are eligible for an exemption from sales and use taxes, only if:**

**(1) the property is located in an area in which the housing finance corporation is authorized to own real property or engage in residential development under Section 394.031(c) or (d);**

**(2) the board of directors of the corporation has adopted a resolution approving the multifamily residential development;**

**(3) before approval of the board of directors under Subdivision (2), the housing finance corporation or a sponsoring local government of the corporation:**

**(A) conducts, or obtains from a professional entity that has experience underwriting affordable residential developments and does not have a financial interest in the corporation or the applicable development, developer, or investors, an underwriting assessment of the proposed development that is dated not earlier than 180 days before the date of the board resolution;**

**(B) based on the underwriting assessment, makes a good faith determination that the total amount of annual rent reduction applicable to the development, as defined by Section 394.9026(a), will be not less than 50 percent of the amount of estimated ad valorem taxes that would be imposed on the property in the same tax year if the applicable property did not receive an exemption from those taxes under this section:**

**(i) for a development that is acquired by the corporation, each of the third, fourth, and fifth tax years after the tax year that the corporation acquires the development; and**

**(ii) for a newly constructed development not described by Subparagraph (i), each of the first, second, and third tax years after the tax year in which the development first achieves an occupancy rate of 90 percent; and**

**(C) publishes on its Internet website a copy of the underwriting assessment required by this subsection; and**

(4) the housing finance corporation submits to the Texas Department of Housing and Community Affairs and to the chief appraiser for each appraisal district in which the exemption is sought a one-time exemption application on a form promulgated by the comptroller.

(c) Notwithstanding Subsections (a) and (b), and subject to Section 394.9027, a multifamily residential development owned by a housing finance corporation or a housing finance corporation user is not entitled to an ad valorem tax exemption for any given tax year in which:

(1) the corporation or the housing finance corporation user is not in compliance with any provisions of Section 394.9026(c) and:

(A) the notice requirements in Section 394.9027(d) have been fulfilled; and

(B) the noncompliance is not resolved to the satisfaction of the department within the period provided by Section 394.9027(d)(2); or

(2) the corporation or the housing finance corporation user has not timely submitted the audit report required by Section 394.9027.

(d) Subsection (a) does not apply to ad valorem taxes imposed on a multifamily residential development by:

(1) a conservation or reclamation district created under Section 52, Article III, or Section 59, Article XVI, Texas Constitution, that provides water, sewer, or drainage service to the development, unless the applicable corporation has entered into a written agreement with the district to make a payment to the district in lieu of taxation, in the amount specified in the agreement; or

(2) an emergency services district created under Chapter 775, Health and Safety Code, unless the applicable corporation has entered into a written agreement with the district to make a payment to the district in lieu of taxation, in the amount specified in the agreement.

(e) Subsections (b)(3), (b)(4), and (c) do not apply to a multifamily residential development that is:

(1) owned by a housing finance corporation; and

(2) the recipient of a low income housing tax credit allocated under Subchapter DD, Chapter 2306, Government Code.

(f) The corporation is exempt from the franchise tax imposed by Chapter 171, Tax Code, only if the corporation is exempted by that chapter.

<< Repealed: TX LOCAL GOVT § 394.005 >>

SECTION 12. Section 394.005, Local Government Code, is repealed.

<< Note: TX LOCAL GOVT §§ 394.031, 394.903, 394.037, 394.9025, 394.905 >>

<< Note: TX LOCAL GOVT §§ 394.9026, 394.9027 >>

SECTION 13. (a) Subject to Subsection (i) of this section, Sections 394.031(c) and (d), Local Government Code, as added by this Act, and Section 394.903, Local Government Code, as amended by this Act, apply only to the ownership of real property that is acquired by a housing finance corporation on or after the effective date of this Act. The ownership of real property acquired by a housing finance corporation before the effective date of this Act, and the authority of a housing finance corporation to own

that property or to engage in residential development with respect to that real property in an area outside the areas authorized by Sections 394.031(c) and (d), Local Government Code, as added by this Act, are governed by the law in effect on the date the property was acquired by the housing finance corporation, and the former law is continued in effect for that purpose.

(b) Section 394.037(a–1), Local Government Code, as added by this Act, and Section 394.9025, Local Government Code, as amended by this Act, apply only to bonds issued on or after the effective date of this Act. Bonds issued before the effective date of this Act are governed by the law in effect on the date the bonds were issued, and the former law is continued in effect for that purpose.

(c) Section 394.9026, Local Government Code, as added by this Act, and Section 394.905, Local Government Code, as amended by this Act, apply only to a tax for a tax year that begins on or after the effective date of this Act.

(d) Subject to Subsections (e) and (f) of this section, Sections 394.9026 and 394.9027, Local Government Code, as added by this Act, apply to all multifamily residential developments claiming an exemption under Section 394.905, Local Government Code, regardless of when the developments were approved or acquired.

(e) A multifamily residential development that was acquired by a housing finance corporation before the effective date of this Act is not eligible for an exemption under Section 394.905, Local Government Code, as amended by this Act, unless the housing finance corporation that owns the development and any housing finance corporation user, as defined by Section 394.9026, Local Government Code, as added by this Act, associated with the development come into compliance:

(1) not later than January 1, 2026, with Sections 394.9026(c)(6), (7), (8), and (9), Local Government Code, as added by this Act; and

(2) with Sections 394.9026(c)(1), (2), (3), (4), and (5), Local Government Code, as added by this Act, not later than the earlier of:

(A) the end of the 10th tax year following the effective date of this Act; or

(B) the end of the first tax year following a tax year in which:

(i) existing mortgage indebtedness of the development is refinanced;

(ii) title to the development is conveyed; or

(iii) a sale, conveyance, transfer or assignment, or series of sales, conveyances, transfers or assignments, results in a change in a majority of the beneficial ownership interests of any housing finance corporation user associated with the development.

(f) Notwithstanding Section 394.9027(b) or (f), Local Government Code, as added by this Act, the initial audit report required to be submitted under Section 394.9027(b), Local Government Code, as added by this Act, for a multifamily residential development that was acquired by a housing finance corporation before the effective date of this Act must be submitted by the later of:

(1) the date established by Section 394.9027(e), Local Government Code, as added by this Act; or

(2) June 1, 2026.

(g) Subject to Subsections (e), (h), and (i) of this section, Section 394.905, Local Government Code, as amended by this Act, applies to all multifamily residential developments owned by a housing finance corporation, regardless of when the developments were approved or acquired.

(h) Sections 394.905(b)(1), (2), and (3) and (d), Local Government Code, as added by this Act, apply only to multifamily residential developments that are acquired by a housing finance corporation on or after the effective date of this Act.

(i) A residential development that is owned by a housing finance corporation on September 1, 2025, and is located outside an area in which the corporation is authorized to own real property or engage in residential development under Section 394.031(c), Local Government Code, as added by this Act, is not eligible for an ad valorem tax exemption under Section 394.905, Local Government Code, as amended by this Act, after January 1, 2027, unless the corporation obtains the appropriate resolutions or orders required under Section 394.031(d), Local Government Code, as added by this Act, before that date.

(j) Not later than January 1, 2026, the Texas Department of Housing and Community Affairs shall adopt rules necessary to implement Section 394.9027(i), Local Government Code, as added by this Act.

SECTION 14. This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution. If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2025.

Passed by the House on May 10, 2025: Yeas 115, Nays 13, 3 present, not voting; passed by the Senate on May 14, 2025: Yeas 30, Nays 1.

Approved May 28, 2025.
Effective May 28, 2025.

---

                                             © 2025 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT B

FILED
TARRANT COUNTY
6/2/2025 10:27 AM
THOMAS A. WILDER
DISTRICT CLERK

No. 348-363561-25

| | | |
|---|---|---|
| CITY OF ARLINGTON, | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| PECOS HOUSING FINANCE | § | |
| CORPORATION, a Texas nonprofit | § | |
| corporation; JOE DON BOBBITT, in his | § | 348TH JUDICIAL DISTRICT |
| official capacity as Chief Appraiser of the | § | |
| Tarrant Appraisal District, | § | |
| | § | |
| *Defendants,* | § | |
| | § | |
| v. | § | |
| | § | |
| CITY OF FORT WORTH, | § | |
| | § | |
| *Intervenor-Plaintiff.* | § | TARRANT COUNTY, TEXAS |
| | § | |

**PLAINTIFF CITY OF ARLINGTON'S
THIRD AMENDED PETITION AND APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF**

TO THE HONORABLE JUDGE MEGAN FAHEY:

In support of its Third Amended Petition and Application for a Temporary Restraining Order and Injunctive Relief, Plaintiff City of Arlington ("Arlington") alleges the following:

## I.    INTRODUCTION

1.      This case concerns a misuse and abuse of the Texas Housing Finance Corporation Act, Tex. Local Gov't Code §§ 394.001 *et seq.* Arlington recently learned that the Pecos Housing Finance Corporation ("Pecos HFC"), the Pleasanton Housing Finance Corporation ("Pleasanton HFC"), and the La Villa Housing Finance Corporation ("La Villa HFC") (collectively, "Defendant HFCs") have been unlawfully removing Arlington-based properties from the tax appraisal rolls in exchange for monetary kickbacks, resulting in the loss of millions of dollars in real property value from the local tax base.

2.      The Defendant HFCs' scheme seems to work like this: a private developer acquires

land for a new multifamily development (or acquires an already-existing development) in a city outside the HFC's local jurisdiction; the private developer then conveys that property to the HFC; the HFC, as the new owner, then applies for and receives a 100% tax exemption, and the property is removed from the tax rolls; the HFC then leases that now-exempt property to a private landlord (oftentimes the same developer who originally purchased the property), who then shares the profits with the HFC. The upshot of this scheme is that the developer and landlord get a massive tax exemption, the HFC gets to collect fees and a portion of the development's profits, and the other city (in this case, Arlington) bears 100% of the downside.

3. In short, a handful of tiny public corporations, located hundreds of miles away in small towns with no connection to Arlington, have drastically reduced Arlington's yearly tax revenue by millions of dollars while they rake in undeserved fees and profits from Arlington-based rental properties. Arlington now asks this Court to halt the Defendant HFCs' unlawful behavior before they do any further irreversible damage to Arlington's tax base, and to stop the Chief Appraiser of the Tarrant Appraisal District from granting tax exemptions requested by the Defendant HFCs for any Arlington-based properties.

## II. PARTIES

4. Plaintiff City of Arlington is a home-rule municipality located in Tarrant County, Texas.

5. Defendant Pecos HFC is a Texas nonprofit corporation. It may be served with citation through its registered agent, John Salcido, at 2320 Teague Dr., Pecos, Texas 79772, or wherever else he may be located.

6. Defendant Pleasanton HFC is a Texas nonprofit corporation. It may be served with citation through its registered agent, Johnny Huizar, at 108 Second St., Pleasanton, Texas 78064, or wherever else he may be located.

7. Defendant La Villa HFC is a Texas nonprofit corporation. It may be served with citation through its registered agent, Rosa Perez, at 916 South Mike Chapa Dr., La Villa, Texas 78562, or wherever else he may be located.

8. Defendant Joe Don Bobbitt is the Chief Appraiser of the Tarrant Appraisal District. He is being sued in his official capacity only.

## III. JURISDICTION, VENUE, AND DISCOVERY CONTROL PLAN

9. This Court has jurisdiction over this matter because Plaintiff seeks relief within the jurisdictional limits of this Court. *See* Tex. Civ. Prac. & Rem. Code §§ 65.001 *et seq.*; Tex. Tax Code §§ 43.01, 43.03; Tex. R. Civ. P. 680.

10. Venue is proper in Tarrant County because all (or at least a substantial part) of the events and actions giving rise to this case occurred in Tarrant County—and by conducting business in Tarrant County, the Defendant HFCs have purposely availed themselves to this venue. *See* Tex. Civ. Prac. & Rem. Code § 15.002(a)(1). This suit, moreover, concerns real property located in Tarrant County, making Tarrant County the mandatory venue for this case. *See id.* § 15.011.

11. Venue is also proper pursuant to the Tax Code. The Tax Code provides that "[a] taxing unit," like Arlington, "may sue the appraisal district that appraises property for the unit to compel the appraisal district to comply with . . . applicable law." Tex. Tax Code § 43.01. And it further provides that, in such a suit, "[v]enue is in the county in which the appraisal district is established." *Id.* § 43.02. As such, because Arlington (a taxing unit) is suing the Tarrant Appraisal District, Tarrant County is the mandatory venue for this case. *Id.* Sections 43.01 and 43.03 of the Tax Code, moreover, waive any governmental immunity Defendant Bobbitt might have.

12. Arlington intends to conduct discovery in this case under the Level 3 discovery control plan. *See* Tex. R. Civ. P. 190.4.

## IV. BACKGROUND & RELEVANT LAW

### A. The Texas Housing Finance Corporation Act.

13. This suit concerns the Texas Housing Finance Corporation Act, Tex. Local Gov't Code §§ 394.001 *et seq.* ("the Act"). The Act was passed in 1979 to help facilitate the development of low-income housing. *See* Tex. Local Gov't Code § 394.002(a) (the Act's purpose is to "provide a means to finance the cost of residential ownership and development that will provide decent, safe, and sanitary housing at affordable prices for residents of local governments").

14. To help create more low-income housing, the Act empowers local governments to create Housing Finance Corporations, or HFCs—nonprofit organizations, comprised of local officials, that help coordinate and facilitate affordable-housing projects. *See* Tex. Local Gov't Code §§ 394.002, 394.011(a), 394.032. And because HFCs are (at least in theory) furthering a public purpose, the Act provides that HFC-owned properties and the income derived from those properties are tax-exempt. *Id.* § 394.905 ("The housing finance corporation, all property owned by it, the income from the property, all bonds issued by it, the income from the bonds, and the transfer of the bonds are exempt, as public property used for public purposes, from license fees, recording fees, and all other taxes imposed by this state or any political subdivision of this state.").

15. HFCs are commonly a part of public/private real estate partnerships, in which a private developer acquires land for a new development or acquires an existing multifamily project and then conveys it to an HFC, which then acquires tax-exempt status for the property and leases the property to a private landlord who, in turn, pays fees to the HFC and shares the profits generated by the property with the HFC.

16. But because the Act allows for such an enormous tax benefit, it provides two specific restrictions on what residential developments an HFC can tax-exempt: (1) a residential development can receive tax exemption from an HFC only if at least 90% of the development "is for use by or is intended to be occupied by persons of low and moderate income," as defined by the statute, *id.* § 394.004; and (2) the residential development "must be located within the local government," *id.* § 394.903.

17. An HFC, in other words, can tax-exempt a residential development only if the development is located within the HFC's local jurisdiction and is actually used to house low-income individuals. *See id.* §§ 394.004, 394.903.

**B.      Several faraway HFCs are unlawfully exempting properties in Arlington that do not house low-income residents.**

18. Arlington recently learned that the Defendant HFCs have been ignoring these statutory restrictions and has been giving tax exemptions to large, multifamily housing

developments in Arlington without Arlington's knowledge, input, or approval. [Affidavit of Mindy Cochran, attached hereto as **Exhibit 1**, at ¶¶ 4–10.]

19. The Defendant HFCs' unlawful tax-exemption scheme has removed tens of millions of dollars from Tarrant County taxing units' tax rolls and has caused Arlington to lose millions of dollars in annual tax revenue. [*Id.* at ¶ 10.]

20. To illustrate, several months ago, Defendant Pecos HFC acquired the Zenith North Collins (735 Washington Dr.) apartment complex—an already-built, upscale apartment complex located next to a golf course in Arlington.[1] [*Id.* at ¶ 5.] After acquiring this complex, the Pecos HFC applied for and received a full tax exemption for this property. [*Id.*] And after receiving that exemption, it leased the complex to a private landlord and now collects a share of that complex's profits. [*Id.*] This property was appraised at $86 million. [*Id.*] So, when it was removed from the tax rolls, that caused the Tarrant County Appraisal District to lose $1.7 million in annual ad valorem tax revenue, and Arlington's share of that revenue was approximately $447,000. [*Id.*]

21. In other words, by exempting just one apartment complex in Arlington, the Pecos HFC caused Arlington to lose roughly $447,000 in annual tax revenue, and there is no clear path for Arlington (or other affected local entities) to recoup that loss. [*See id.*]

22. To make matters worse, the Zenith North Collins doesn't even provide low-income housing. With fees and rent, a three-bedroom apartment in this complex costs well over $3,000 per month, and a two-bedroom is around $2,000 per month.[2] And upon information and belief, this complex does not come close to meeting the 90%-low-income-housing threshold needed to receive an exemption under the Act. *See* Tex. Local Gov't Code § 394.004 (providing that a residential development can receive tax exemption from a HFC only if at least 90% of the development "is for use by or is intended to be occupied by persons of low and moderate income").

23. This is a widespread problem across the state. The City of Euless, for example, has

---

[1] At the time of acquisition, this complex was known as the "Jefferson North Collins" apartment complex.

[2] https://www.zenitharlington.com/floorplans/.

seen at least a 2% drop in its overall annual revenue after a *single* apartment complex received tax-exempt status from the Cameron County HFC;[3] and Dallas, Fort Worth, McKinney, Irving, Lewisville, and other north Texas cities have reported millions of dollars in total lost tax revenue.[4] Worse, these out-of-jurisdiction HFCs are often bestowing tax-exempt status to already-built structures (not new projects), and many of the exempted properties aren't even affordable-housing projects; they are typical for-profit apartments and condos, usually located in upmarket neighborhoods, that do not offer reduced rent, housing vouchers, or other benefits to low-income applicants.[5]

24.     Upon information and belief, the Pecos HFC also recently bestowed tax-exempt status to another apartment complex in Arlington called Cedar Point (2020 Cedar Point Dr.). [Exhibit 1 at ¶ 6.] That property is appraised at approximately $27.5 million, and Arlington's lost ad valorem tax revenue because of this tax exemption amounts to about $165,000 per year. [*Id.*] That complex, similarly, does not offer affordable housing as contemplated by the Act.

25.     Arlington, moreover, has good reason to believe the Pecos HFC plans to close on several more Arlington-based properties in the coming months, and that it is on the verge of closing on one of those properties in the coming days. [*Id.* at ¶ 10; Affidavit of Molly Shortall, attached hereto as **Exhibit 2**, at ¶ 5.]

26.     Arlington also recently learned that the Pleasanton HFC and the La Villa HFC have been engaging in the same sort of unlawful tax-exemption scheme in Arlington. [Exhibit 1 at ¶¶ 4, 8–9.]

27.     The Pleasanton HFC has acquired at least two properties in Arlington: The Washington apartment complex (707 Washington Dr.) and Cedars and River Legacy Park (903 Ashford Ln.). [*Id.* at ¶ 8.] Upon information and belief, the Pleasanton HFC has applied for, but

---

[3]     Andrea Lucia, *Euless Loses 2 Percent of Revenue to Controversial Tax Break Approved in Faraway County*, CBS News (Feb. 21, 2024).

[4]     Andrea Lucia, *Housing Group Made Millions Getting Tax Breaks for Developers, Costing Cities and Schools Even More*, CBS News (Dec. 22, 2023).

[5]     *Id.* (documenting that an out-of-town HFC purchased an apartment complex in a "luxurious community" in Irving and that the tenants' rents went *up* significantly under the HFC's ownership).

has not yet received, tax exemptions for these properties. [*Id.*]

28.     The Washington is appraised at approximately $34.5 million; if taken off the tax rolls, it would cause the Tarrant County Appraisal District to lose about $754,000 in annual ad valorem tax revenue, and Arlington's share of that lost revenue would be approximately $207,000 per year. [*Id.* at ¶ 8a.] Cedars and River Legacy Park is appraised at approximately $32.5 million; if taken off the tax rolls, it would cause the Tarrant County Appraisal District to lose about $710,000 in annual ad valorem tax revenue, and Arlington's share of that lost revenue would be approximately $195,000 per year. [*Id.* at ¶ 8b.]

29.     In other words, if the Pleasanton HFC receives tax exemptions for these properties, it will likely cause Arlington to lose over $400,000 in annual ad valorem tax revenue. [*Id.* at ¶ 8.]

30.     Arlington also recently learned that the La Villa HFC has acquired at least one property in Arlington: The Carmin apartment complex (711 Brentford Pl.). [*Id.* at ¶ 9.] Upon information and belief, the La Villa HFC has applied for, but has not received, a tax exemption for this property. [*Id.*] The Carmin is appraised at $23.9 million; if taken off the tax rolls, it would cause the Tarrant County Appraisal District to lose about $522,000 in annual ad valorem tax revenue, and Arlington's share of that lost revenue would be approximately $143,000 per year. [*Id.*] In other words, if the La Villa HFC receive a tax exemption for this property, it will likely cause Arlington to lose about $143,000 in annual ad valorem tax revenue. [*Id.*]

31.     Because of the widespread nature of this practice (see ¶ 22 *supra*), there has been a strong legislative push to (even more) explicitly outlaw this sort of tax-exemption scheme. *See, e.g.*, 2025 H.B. No. 21 (link). Upon information and belief, because this sort of scheme is about to become indisputably illegal, HFCs have been scrambling to close their out-of-jurisdiction projects and apply for undeserved tax exemptions.

V.     **CAUSE OF ACTION: DECLARATORY JUDGMENT & TAX CODE**

32.     Texas's Uniform Declaratory Judgments Act (UDJA) allows trial courts to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." Tex. Civ. Prac. & Rem. Code § 37.003. The UDJA further provides that "[a] person . . . whose rights,

status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder." *Id.* § 37.004(a). The Legislature intended the UDJA to be "remedial" and "liberally construed," and "its purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." *Id.* § 37.002(b).

33.    In a declaratory action, like this one, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." *Id.* § 37.009.

34.    Arlington asks for a declaratory judgment from this Court declaring that the Act does not allow the Defendant HFCs acquire real property in Arlington or to bestow tax exemptions to Arlington-based properties.

35.    The Tax Code, moreover, provides that "[a] taxing unit," like Arlington, "may sue the appraisal district that appraises property for the unit to compel the appraisal district to comply with . . . applicable law." Tex. Tax Code § 43.01. And it further empowers this Court to "enter . . . orders necessary to compel compliance by the appraisal office." *Id.* § 43.03.

36.    Pursuant to these laws, Arlington asks for this Court to prevent Defendant Bobbitt from unlawfully awarding any further tax exemptions to the Defendant HFCs. *See id.* §§ 43.01, 43.03; Tex. Civ. Prac. & Rem. Code §§ 37.001 *et seq.*

## VI.    APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTION

37.    To stop the Defendant HFCs from unlawfully removing any more Arlington-based properties from the tax rolls, Arlington asks this Court for a temporary restraining order ("TRO") that prohibits the Defendant HFCs from (a) closing on any Arlington-based properties or (b) requesting, obtaining, or receiving any tax exemptions for Arlington-based properties.

38.    Arlington further requests a TRO that prohibits Joe Don Bobbitt, the Chief Appraiser of the Tarrant Appraisal District, from granting tax exemptions requested by the Defendant HFCs regarding any Arlington-based properties.

39.    Arlington requests the Court to issue this TRO without notice to Defendants. Rule 680 allows the Court to issue a TRO without notice if it "clearly appears from specific facts shown

by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon." Tex. R. Civ. P. 680.

40.     Arlington has seen a surge in out-of-jurisdiction HFC activity, with many moving to close on properties and apply for tax exemptions at breakneck speed; and at least one of the Defendant HFCs has averred to the Arlington City Attorney that it is on the verge of closing on at least one Arlington-based property in the coming days [Exhibit 2 at ¶ 5], and Arlington believes these HFCs will rush to close on deals and seek exemptions if they are made aware of this TRO application.

41.     The Pleasanton HFC and the La Villa HFC, moreover, have recently closed on Arlington properties and, upon information and belief, plan to request undeserved tax exemptions for these properties. [Exhibit 1 at ¶¶ 8–9.] If these HFCs receive these requested exemptions, Arlington will irrevocably lose about $545,000 in annual ad valorem tax revenue. [*Id.*]

42.     Additionally, as previously noted, this sort of tax-exemption scheme is, in all likelihood, about to become indisputably illegal, and Arlington believes the Defendant HFCs are already in a rush to close on as many out-of-jurisdiction deals as possible in the coming weeks and months. A no-notice TRO will prevent this unlawful behavior from occurring and will not unduly prejudice the Defendant HFCs in the short-term.

43.     Judge Betsy Lambeth, of the 425th District Court in Williamson County, recently granted a no-notice TRO against the Cameron County HFC on virtually identical grounds. [*See* Plf. Orig. Pet. & TRO, *Williamson Cnty. et al. v. Cameron Cnty. Housing Finance Corp.*, 425th Judicial District Court, No. 25-0488-C425 (March 5, 2025), attached hereto as **Exhibit 3**.]

44.     This Court should follow suit and issue a TRO that prevents the Defendant HFCs from overstepping their jurisdictional bounds and from requesting tax-exempt status for any Arlington-based properties. And out of an abundance of caution, this Court should also issue a TRO against the Defendant Joe Don Bobbitt, the Chief Appraiser of the Tarrant Appraisal District, that prevents him from granting tax exemptions requested by the Defendant HFCs regarding any

Arlington-based properties.

45.     Once that TRO has expired, Arlington asks for a temporary injunction. "To obtain a temporary injunction, [an] applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) probable, imminent, and irreparable injury in the interim." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). "Whether to grant or deny a temporary injunction is within the trial court's sound discretion," and an order granting injunctive relief will be reversed on appeal only if "the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion." *Id.*

46.     All these elements are present. Arlington has pled two causes of action against Defendants: a declaratory action under the UDJA and an action pursuant to Chapter 43 of the Tax Code. Tex. Civ. Prac. & Rem. Code §§ 37.001 *et seq.*; Tex. Tax Code §§ 43.01 *et seq.* Arlington has shown it will likely be successful in these actions, as the Act's plain language prohibits the Defendant HFCs' complained-of conduct. And, in the absence of injunctive relief, the Defendant HFCs are likely to close on several more Arlington-based properties and acquire 100% tax exemptions, which would lead to an irreversible removal of these properties from the local tax rolls, causing Arlington to forever lose out on hundreds of thousands, if not millions, of much-needed tax revenues. Simply put, this is precisely the sort of case in which equitable relief is warranted.

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiff City of Arlington respectfully asks this Court for the following relief:

(A)     To issue a TRO against the Defendant HFCs and Defendant Joe Don Bobbitt that (i) prevents the Defendant HFCs from requesting tax exemptions for any Arlington-based properties, and (ii) prevents Defendant Bobbitt from granting tax exemptions requested by the Defendant HFCs regarding any Arlington-based properties. A proposed TRO was filed contemporaneously herewith.

(B)     After the expiration of this TRO, and after a hearing, to issue a temporary injunction

against the same Defendants that enjoins the same unlawful conduct pending trial.

(C)     After the expiration of this temporary injunction, and after a final trial on the merits, to issue (i) a declaratory judgment declaring that the Texas Housing Finance Corporation Act, Tex. Local Gov't Code §§ 394.001 *et seq.*, does not allow the Defendants HFCs to acquire real property in Arlington or bestow tax-exempt status to properties located in Arlington; and (ii) a permanent injunction that prevents the Defendant Bobbitt from granting tax exemptions requested by the Defendant HFCs regarding any Arlington-based properties.

(D)     To award Plaintiff its attorney's fees and costs.

(E)     To award any other relief this Court deems appropriate.

Respectfully submitted,

By:  */s/  Alexander J. Lindvall*
     Galen G. Gatten
      State Bar No. 24032226
      galen.gatten@arlingtontx.gov
     Alexander J. Lindvall
      State Bar No. 24139409
      alexander.lindvall@arlingtontx.gov
     Jonathan M. Moss
      State Bar No. 24084934
      jonathan.moss@arlingtontx.gov
     Joseph N. Nguyen
      State Bar No. 24058021
      joseph.nguyen@arlingtontx.gov
     Nena Chima-Tetteh
      State Bar No. 24113691
      nena.chima-tetteh@arlingtontx.gov

**CITY OF ARLINGTON**
**CITY ATTORNEY'S OFFICE**
P.O. Box 90231, MS 63-0300
Arlington, Texas 76004
Phone: 817-459-6878
***Attorneys for Plaintiff City of Arlington***

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Alexander Lindvall on behalf of Alexander Lindvall
Bar No. 24139409
alexander.lindvall@arlingtontx.gov
Envelope ID: 101486661
Filing Code Description: Amended Filing
Filing Description: Arlington's Third Amended Petition and Request for TRO and Injunctive Relief
Status as of 6/2/2025 12:00 PM CST

Associated Case Party: THECITY OF ARLINGTON

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Galen Gatten | | galen.gatten@arlingtontx.gov | 6/2/2025 10:27:14 AM | SENT |
| Alexander JLindvall | | alexander.lindvall@arlingtontx.gov | 6/2/2025 10:27:14 AM | SENT |

Associated Case Party: THEPECOS HOUSING FINANCE CORPORATION

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jeffrey MTillotson | | jtillotson@tillotsonlaw.com | 6/2/2025 10:27:14 AM | SENT |
| Jonathan RPatton | | jpatton@tillotsonlaw.com | 6/2/2025 10:27:14 AM | SENT |
| Kira Lytle | | klytle@tillotsonlaw.com | 6/2/2025 10:27:14 AM | SENT |
| TJP Service | | tillotsonjohnsonpatton@gmail.com | 6/2/2025 10:27:14 AM | SENT |
| Kathryn Yukevich | 24133390 | kyukevich@tillotsonlaw.com | 6/2/2025 10:27:14 AM | SENT |

Associated Case Party: JOEDONBOBBITT

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Joe DonBobbitt | | jdbobbitt@tad.org | 6/2/2025 10:27:14 AM | SENT |

Associated Case Party: THEPLEASANTON HFC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Blake Stribling | | bstribling@chasnoffstribling.com | 6/2/2025 10:27:14 AM | SENT |
| Kim Decker | | kdecker@chasnoffstribling.com | 6/2/2025 10:27:14 AM | SENT |
| Daniel Lecavalier | 24129028 | dlecavalier@chasnoffstribling.com | 6/2/2025 10:27:14 AM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Alexander Lindvall on behalf of Alexander Lindvall
Bar No. 24139409
alexander.lindvall@arlingtontx.gov
Envelope ID: 101486661
Filing Code Description: Amended Filing
Filing Description: Arlington's Third Amended Petition and Request for TRO and Injunctive Relief
Status as of 6/2/2025 12:00 PM CST

Associated Case Party: THEPLEASANTON HFC

| | | | | |
|---|---|---|---|---|
| Daniel Lecavalier | 24129028 | dlecavalier@chasnoffstribling.com | 6/2/2025 10:27:14 AM | SENT |
| Lisa O'Sullivan | | losullivan@chasnoffstribling.com | 6/2/2025 10:27:14 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Liz Hansen | | lhansen@lsejlaw.com | 6/2/2025 10:27:14 AM | SENT |
| Jonathan Moss | | jonathan.moss@arlingtontx.gov | 6/2/2025 10:27:14 AM | SENT |
| Nena Chima-Tetteh | | nena.chima-tetteh@arlingtontx.gov | 6/2/2025 10:27:14 AM | SENT |
| Eric Ruiz | | eruiz@lsejlaw.com | 6/2/2025 10:27:14 AM | SENT |
| Jannet Alarcon | | jannet.alarcon@fortworthtexas.gov | 6/2/2025 10:27:14 AM | SENT |
| Erica Salas | | erica.salas@arlingtontx.gov | 6/2/2025 10:27:14 AM | SENT |
| JAMES EVANS | | JEVANS@LSEJLAW.COM | 6/2/2025 10:27:14 AM | SENT |
| Joseph Nguyen | | joseph.nguyen@arlingtontx.gov | 6/2/2025 10:27:14 AM | SENT |
| Steve ACumbie | | stephen.cumbie@fortworthtexas.gov | 6/2/2025 10:27:14 AM | SENT |
| Christopher BMosley | | chris.mosley@fortworthtexas.gov | 6/2/2025 10:27:14 AM | SENT |
| Olyn Poole | | olyn.poole@fortworthtexas.gov | 6/2/2025 10:27:14 AM | SENT |

Associated Case Party: THELA VILLA HFC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Daniel Lecavalier | 24129028 | dlecavalier@chasnoffstribling.com | 6/2/2025 10:27:14 AM | SENT |
| Rosa Perez | | rosaperez@cityoflavilla.org | 6/2/2025 10:27:14 AM | SENT |

Associated Case Party: THECITY OF FORT WORTH

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Alexander Lindvall on behalf of Alexander Lindvall
Bar No. 24139409
alexander.lindvall@arlingtontx.gov
Envelope ID: 101486661
Filing Code Description: Amended Filing
Filing Description: Arlington's Third Amended Petition and Request for
TRO and Injunctive Relief
Status as of 6/2/2025 12:00 PM CST

Associated Case Party: THECITY OF FORT WORTH

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Chandra  Jackson | | chandra.jackson@fortworthtexas.gov | 6/2/2025 10:27:14 AM | SENT |
| THE CITY OF FORT WORTH | | Chandra.Jackson@fortworthtexas.gov | 6/2/2025 10:27:14 AM | SENT |
| THE A.CITY OF FORT WORTH | | stephen.cumbie@fortworthtexas.gov | 6/2/2025 10:27:14 AM | SENT |

# EXHIBIT C

FILED
TARRANT COUNTY
6/10/2025 3:41 PM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 348-363561-25

| | | |
|---|---|---|
| CITY OF ARLINGTON, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| PECOS HOUSING FINANCE | § | |
| CORPORATION, a Texas nonprofit | § | |
| corporation; JOE DON BOBBITT, in his | § | |
| official capacity as Chief Appraiser of the | § | 348th JUDICIAL DISTRICT |
| Tarrant Appraisal District, | § | |
| | § | |
| *Defendants,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| CITY OF FORT WORTH | § | |
| | § | |
| *Intervenor-Plaintiff* | § | TARRANT COUNTY, TEXAS |

---

## CITY OF FORT WORTH'S FOURTH AMENDED PETITION IN INTERVENTION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

---

TO THE HONORABLE JUDGE OF THIS COURT:

In support of its Petition in Intervention and its Application for a Temporary Restraining Order and Injunctive Relief, Plaintiff-Intervenor City of Fort Worth ("Fort Worth") alleges the following:

### I.    INTRODUCTION

1.     This case concerns a misuse and abuse of the Texas Housing Finance Corporation Act, Tex. Local Gov't Code §§ 394.001 *et seq.* Fort Worth recently learned that the Pecos Housing Finance Corporation ("Pecos HFC"), the Pleasanton Housing Finance Corporation ("Pleasanton HFC") the La Villa Housing Finance Corporation ("La Villa HFC"), the Maverick County Housing Finance Corporation ("Maverick County HFC"), and the Cameron County Housing

Finance Corporation ("Cameron County HFC") have been unlawfully removing Fort Worth-based properties from Tarrant County tax appraisal rolls in exchange for monetary kickbacks resulting in the loss of millions of dollars in real property value from the local tax base.

2.      Defendant HFCs' scheme seems to work like this: a private developer acquires land for a new multifamily development (or acquires an already-existing multifamily development) in a city or county other than where the HFC is located; the private developer then conveys that property to the HFC; the HFC, as the new owner, then applies for and receives a 100% tax exemption from the Tarrant Appraisal District, and the property is removed from the tax rolls; the HFC then leases that now-exempt property back to a private landlord (oftentimes the same developer who originally purchased the property), who then shares the profits with the HFC. The upshot of this scheme is that the developer and landlord get a massive tax exemption, the HFC gets to collect fees and a portion of the development's profits, and the other city (in this case, Fort Worth) bears 100% of the downside.

3.      In short, a handful of tiny public corporations, located hundreds of miles away in towns with no connection to Fort Worth, have drastically reduced Fort Worth's yearly tax revenue by millions of dollars while they rake in undeserved fees and profits from Fort Worth-based rental properties. Fort Worth now intervenes to ask this Court to halt the Defendant HFCs' unlawful behavior before they do any further irreversible damage to Fort Worth's tax base, and to stop the Chief Appraiser of the Tarrant Appraisal District from granting tax exemptions requested by the Defendant HFCs for any Fort Worth- based properties.

## II.      PARTIES

4.      Plaintiff City of Arlington is a home-rule municipality located in Tarrant County, Texas.

5.      Intervenor-Plaintiff City of Fort Worth is a home-rule municipality located in Tarrant County, Texas.

6.      Defendant Pecos HFC is a Texas nonprofit corporation.  It has already been served

and appeared.

7. Defendant Pleasanton HFC is a Texas nonprofit corporation. It has already been served and appeared.

8. Defendant La Villa HFC is a Texas nonprofit corporation. It has already been served and appeared.

9. Defendant Maverick County HFC is a Texas nonprofit corporation. It has already been served and appeared.

10. Defendant Cameron County HFC is a Texas nonprofit corporation. It can be served with citation through its registered agent, Mark A. Yates, at 216 S Sam Houston Blvd, STE 2-B, San Benito, Texas 78586, or wherever else he may be located.

11. Defendant Joe Don Bobbitt is the Chief Appraiser of the Tarrant Appraisal District. He is being sued in his official capacity only and has already been served and appeared.

## III. JURISDICTION, VENUE, AND DISCOVERY CONTROL PLAN

12. This Court has jurisdiction over this matter because Plaintiffs seek relief within the jurisdictional limits of this Court. *See* Tex. Civ. Prac. & Rem. Code §§ 65.001 *et seq.*; Tex. R. Civ. P. 680.

13. Venue is proper in Tarrant County because all (or at least a substantial part) of the events and actions giving rise to this case occurred in Tarrant County—and by conducting business in Tarrant County, Defendants have purposely availed themselves to this venue. *See* Tex. Civ. Prac. & Rem. Code § 15.002(a)(1). This suit, moreover, concerns real property located in Tarrant County, making Tarrant County the mandatory venue for this case. *See id.* § 15.011.

14. Venue is also proper pursuant to the Tax Code, which provides that "[a] taxing unit," like Fort Worth, "may sue the appraisal district that appraises property for the unit to compel

the appraisal district to comply with…applicable law." Tex. Tax Code § 43.01. It further provides that, in such a suit, "[v]enue is in the county in which the appraisal district is established." *Id.* § 43.02. As such, because Fort Worth (a taxing unit) is suing the Tarrant Appraisal District, Tarrant County is the mandatory venue for this case. *Id.* Sections 43.01 and 4303 of the Tax Code, moreover, waive any governmental immunity Defendant Bobbitt might have.

15.     Plaintiffs intend to conduct discovery in this case under the Level 3 discovery control plan. *See* Tex. R. Civ. P. 190.4.

## IV.     BACKGROUND & RELEVANT LAW

### A.     The Texas Housing Finance Corporation Act.

16.     This suit concerns the Texas Housing Finance Corporation Act, Tex. Local Gov't Code §§ 394.001 *et seq.* ("the Act"). The Act was passed in 1979 to help facilitate the development of low-income housing. *See* Tex. Local Gov't Code § 394.002(a) (the Act's purpose is to "provide a means to finance the cost of residential ownership and development that will provide decent, safe, and sanitary housing at affordable prices for residents of local governments").

17.     To help create more low-income housing, the Act empowers local governments to create Housing Finance Corporations ("HFCs")—nonprofit organizations, comprised of local officials, that help coordinate and facilitate affordable-housing projects. *See* Tex. Local Gov't Code §§ 394.002, 394.011(a), 394.032. And because HFCs are (at least in theory) furthering a public purpose, the Act provides that HFC-owned properties and the income derived from those properties are tax-exempt. *Id.* § 394.905 ("The housing finance corporation, all property owned by it, the income from the property, all bonds issued by it, the income from the bonds, and the transfer of the bonds are exempt, as public property used for public purposes, from license fees, recording fees, and all other taxes imposed by this state or any political subdivision of this state.").

18.     HFCs are commonly a part of public/private real estate partnerships, in which a private developer acquires land for a new development or acquires an existing multifamily project and then conveys it to an HFC, which then acquires tax-exempt status for the property and leases the property to a private landlord who, in turn, pays fees to the HFC and shares the profits generated by the property with the HFC.

19.     But because the Act allows for such an enormous tax benefit, it provides two specific restrictions on what residential developments an HFC can tax-exempt: (1) a residential development can receive tax exemption from an HFC only if at least 90% of the development "is for use by or is intended to be occupied by persons of low and moderate income," as defined by the statute, *id.* § 394.004; and (2) the residential development "must be located within the local government," *id.* § 394.903.

20.     An HFC, in other words, can tax-exempt a residential development only if the development is located within the HFC's local jurisdiction and is actually used to house low-income individuals. *See id.* §§ 394.004, 394.903.

**B.      Defendant HFCs are unlawfully exempting properties in Fort Worth that do not house low-income residents.**

21.     Fort Worth has learned that the Defendant HFCs have been ignoring these statutory restrictions and have been seeking and acquiring tax exemptions for large, multifamily housing developments in Fort Worth.

22.     As described in further detail below, the Defendant HFCs' unlawful tax-exemption scheme has already removed hundreds of millions of dollars from Tarrant County taxing units' tax rolls and have caused Fort Worth to lose millions of dollars in annual tax revenue.

23.     To illustrate, in October of 2024, Defendant Maverick County HFC acquired The

Sovereign (5301 North Tarrant Parkway)[1]—an already-built, self-described "luxury apartment community" located in far north Fort Worth.[2] After acquiring this complex, Maverick County HFC applied for and received a full tax exemption for this property.[3] This property is appraised at $80,369,852.[4] So, when it was removed from the tax rolls, it caused the Tarrant County Appraisal District to lose over $1.8 million in annual ad valorem tax revenue, and Fort Worth's share of that revenue is over $540,000.[5]

24.     In other words, by exempting just one apartment complex in Fort Worth, the Maverick County HFC caused the City of Fort Worth to lose over a half million dollars in annual tax revenue, and there is no clear path for Fort Worth (or other affected local entities) to recoup that loss.

25.     To make matters worse, it appears that The Sovereign doesn't even provide low-income housing. Its smallest unit, a 660 square foot one-bedroom apartment, rents for $1,379 per month.[6] Upon information and belief, this complex does not come close to meeting the 90%-low-to moderate- income housing threshold needed to receive an exemption under the Act. *See* Tex. Local Gov't Code § 394.004 (providing that a residential development can receive tax exemption from a HFC only if at least 90% of the development "is for use by or is intended to be occupied by persons of low and moderate income").

26.     In another example, on January 24, 2025, Defendant Pleasanton HFC acquired the Rocklyn Fort Worth apartment complex, located at 637 Samuels Avenue in the Rocklyn Trinity Uptown neighborhood on the bluffs overlooking the west fork of the Trinity River just north of

---

[1] https://www.tad.org/property?account=41652207
[2] https://www.sovereignkeller.com
[3] https://www.tad.org/property?account=41652207
[4] *Id.*
[5] Calculated from information found at https://taxonline.tarrantcounty.com/TaxWeb/ratesExemptions.asp
[6] https://www.sovereignkeller.com/floor-plans

Downtown Fort Worth.[7] Pleasanton HFC promptly secured a tax exemption for this property, removing its assessed value of over $70 million from the Tarrant County tax rolls.[8] This upscale apartment complex currently offers one- to three-bedroom apartments for monthly rents ranging from $1,464 to $2,976,[9] and upon information and belief, also does not satisfy the low- to moderate-income housing threshold required for an exemption under the Act. In fact, there appears to be no reason to believe renter demographics for this property have in any way changed since the complex opened in 2018. If true, Pleasanton HFC's acquisition of this property has done nothing to increase access to affordable housing as required by statute. Meanwhile, its exemption from property taxes provides the complex with a windfall savings of over $1.5 million annually.[10] Fort Worth loses approximately $474,000 in yearly tax revenue, yet still bears the costs of providing city services to the property.[11]

27. This is a widespread problem across the state. The City of Euless, for example, has seen at least a 2% drop in its overall annual revenue after a *single* apartment complex received tax-exempt status from the Cameron County HFC;[12] and Dallas, McKinney, Irving, Lewisville, and other north Texas cities have reported millions of dollars in total lost tax revenue.[13] Worse, these out-of-jurisdiction HFCs are often bestowing tax-exempt status to already-built structures (not new projects), and many of the exempted properties aren't even affordable-housing projects; they are typical for-profit apartments and condos, usually located in upmarket neighborhoods, that do not

---

[7] https://www.tad.org/property?account=42402920, https://www.tad.org/property?account=42402938, and https://www.tad.org/property?account=42402946
[8] *Id.*
[9] https://www.rocklynfortworth.com/floorplans
[10] Calculated from information found at https://taxonline.tarrantcounty.com/TaxWeb/ratesExemptions.asp
[11] *Id.*
[12] Andrea Lucia, *Euless Loses 2 Percent of Revenue to Controversial Tax Break Approved in Faraway County*, CBS News (Feb. 21, 2024).
[13] Andrea Lucia, *Housing Group Made Millions Getting Tax Breaks for Developers, Costing Cities and Schools Even More*, CBS News (Dec. 22, 2023).

offer reduced rent, housing vouchers, or other benefits to low-income applicants.[14]

28.     According to information available on the Tarrant Appraisal District website, Defendant HFCs currently own a total of 39 properties located in Fort Worth [See the spreadsheet attached hereto as **Exhibit A**]. For 19 of these properties, Defendants have already been granted a 2025 tax exemption by the Tarrant Appraisal District. These 19 exempt properties have a combined assessed value of $728,110,842.00 for the current tax year. The removal of this nearly three quarters of a billion dollars of taxable value from Tarrant County tax rolls will cost the City of Fort Worth approximately $4.9 million in 2025 tax revenue, and will similarly affect the tax revenues of Tarrant County, Tarrant Regional Water District, Tarrant County Hospital District, Tarrant County College, and the Fort Worth, Keller, Eagle Mountain-Saginaw, Crowley and Northwest Independent School Districts.

29.     Defendant HFCs currently own another 20 properties in Fort Worth for which they have not yet acquired a tax exemption. These 20 properties have a combined assessed 2025 value of $651,302,542.00. These properties are the focus of Fort Worth's claims in this lawsuit. Fort Worth intervenes to enjoin Defendants from acquiring tax-exempt status on these properties and to prevent this additional taxable value from being removed from the tax rolls, which otherwise would cost the City $4.4 million in tax revenue.

30.     Because of the widespread nature of this practice, there was a strong bipartisan legislative push to remove any doubt about the illegality of this sort of tax-exemption scheme. *See*, *e.g.*, 2025 H.B. No. 21.[15] This bill has been signed by the governor and is now law.

---

[14] *Id.* (documenting that an out-of-town HFC purchased an apartment complex in a "luxurious community" in Irving and that the tenants' rents went *up* significantly under the HFC's ownership).
[15] https://legiscan.com/TX/text/HB21/id/3053018

## C. Texas Constitution

31. Tex. Const. art. VIII Section 11 limits counties' ad valorem taxation authority to property within their prospective boundaries. Any law that purports to allow a local government to take properties off the tax rolls outside jurisdiction of that local government violates this constitutional principle.

## V. CAUSE OF ACTION: DECLARATORY JUDGMENT & TAX CODE

32. Texas's Uniform Declaratory Judgments Act (UDJA) allows trial courts to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." Tex. Civ. Prac. & Rem. Code § 37.003. The UDJA further provides that "[a] person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder." *Id.* § 37.004(a). The Legislature intended the UDJA to be "remedial" and "liberally construed," and "its purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." *Id.* § 37.002(b).

33. In a declaratory action, like this one, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." *Id.* § 37.009.

34. Fort Worth asks for a declaratory judgment from this Court that the Act prohibits Defendant HFCs from acquiring property outside of their geographical jurisdictions;

35. Fort Worth asks for a declaratory judgment from this Court declaring that the Act does not allow Defendants to bestow tax exemptions to Fort Worth-based properties.

36. Fort Worth further asks for a declaratory judgment that Article VIII, Section 11 of the Texas Constitution limits counties' ad valorem taxation authority to "property within their respective boundaries" and that the Defendants' scheme violates Constitutional limits on the scope

of Texas counties' taxing authority.

37.     The Tax Code, moreover, provides that "[a] taxing unit may sue the appraisal district that appraises property for the unit to compel the appraisal district to comply with ...applicable law." Tx. Tax Code § 43.01. It further empowers this Court to "enter...orders necessary to compel compliance by the appraisal office." *Id.* § 43.03.

38.     Pursuant to these laws, Fort Worth asks this Court to prevent Defendant Bobbitt from unlawfully awarding any further tax exemptions to the Defendant HFCs. *See id.* § 43.01, 43.03; TEX. CIV. PRAC. & REM. CODE §§ 37.001 *et seq.*

## VI.     APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTION

39.     To stop the Defendant HFCs from closing on any more Fort Worth-based properties, Fort Worth asks this Court for a temporary restraining order ("TRO") and a temporary injunction that prohibits the Defendant HFCs from (a) closing on any Fort Worth-based properties or (b) requesting or receiving any tax exemptions for Fort Worth-based properties.

40.     Fort Worth further requests a TRO and a temporary injunction that prohibits Joe Don Bobbitt, the Chief Appraiser of the Tarrant Appraisal District, from granting tax exemptions requested by the Defendant HFCs regarding any Fort Worth-based properties.

41.     Fort Worth requests that this Court issue this TRO without notice to Defendants. Rule 680 allows the Court to issue a TRO without notice if it "clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon." Tex. R. Civ. P. 680. Additionally, as previously noted, this sort of tax-exemption scheme is, in all likelihood, about to become indisputably illegal, and Fort Worth believes the Defendant HFCs are already in a rush to close on as many out-of-jurisdiction deals as possible in the coming weeks and

months. A no-notice TRO will prevent this unlawful behavior from occurring and will not unduly prejudice the Defendant HFCs in the short-term.

41. Judge Betsy Lambeth, of the 425th District Court in Williamson County, recently granted a no-notice TRO against the Cameron County HFC on virtually identical grounds. [*See* Plf. Orig. Pet. & TRO, *Williamson Cnty. et al. v. Cameron Cnty. Housing Finance Corp.*, 425th Judicial District Court, No. 25-0488-C425 (March 5, 2025), attached hereto as **Exhibit B.**]

42. This Court should follow suit and issue a TRO that prevents Defendant HFCs from overstepping jurisdictional bounds and from requesting tax-exempt status for any Fort Worth-based properties. And out of an abundance of caution, this Court should also issue a TRO against the Defendant Joe Don Bobbitt, the Chief Appraiser of the Tarrant Appraisal District, that prevents him from granting tax exemptions requested by a Defendant HFC regarding any Fort Worth-based property.

43. Once that TRO has expired, Fort Worth asks for a temporary injunction. "To obtain a temporary injunction, [an] applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) probable, imminent, and irreparable injury in the interim." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). "Whether to grant or deny a temporary injunction is within the trial court's sound discretion," and an order granting injunctive relief will be reversed on appeal only if "the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion." *Id.*

44. All these elements are present. Fort Worth has pleaded a cause of action against Defendants: a declaratory action under the UDJA. Fort Worth has shown it will likely be successful in this declaratory action, as the Act's plain language prohibits Defendant HFCs' complained-of conduct. And, in the absence of injunctive relief, Defendant HFCs are likely to close on additional

Fort Worth-based properties and/or apply for a tax exemptions, which would lead to an irreversible removal of this property from the local tax rolls. Simply put, this is precisely the sort of case in which equitable relief is warranted.

## PRAYER FOR RELIEF

Based on the foregoing, Intervenor-Plaintiff City of Fort Worth respectfully asks this Court for the following relief:

(A)     To issue a TRO and temporary injunction against Defendant HFCs and Defendant Joe Don Bobbitt that (i) prevents Defendant HFCs from requesting or receiving tax exemptions for any Fort Worth-based properties, and (ii) prevents Mr. Bobbitt from granting tax exemptions requested by Defendant HFCs regarding any Fort Worth-based properties. A proposed TRO was filed contemporaneously herewith.

(B)     After the expiration of this TRO, and after a hearing, to issue a temporary injunction against the same Defendants that enjoins the same unlawful conduct pending trial.

(C)     After a final trial on the merits, to issue (i) a declaratory judgment declaring that the Texas Housing Finance Corporation Act, Tex. Local Gov't Code §§ 394.001 *et seq.*, does not allow Defendant HFCs to bestow tax-exempt status to properties located in Fort Worth; a declaration that Defendant HFCs may not acquire property in Fort Worth; and a declaration and permanent injunction against the Chief Appraiser of TAD from grant further tax exemptions to foreign HFCs.

(D)     To award Fort Worth its attorney's fees and costs.

(E)     To award any other relief this Court deems appropriate.

Respectfully submitted,

/s/ Stephen A. Cumbie
STEPHEN A. CUMBIE
Senior Assistant City Attorney
State Bar No. 24056724
stephen.cumbie@fortworthtexas.gov

CHRISTOPHER B. MOSLEY
Senior Assistant City Attorney
State Bar No. 00789505
chris.mosley@fortworthtexas.gov

OLYN POOLE
Senior Assistant City Attorney
State Bar No. 24037292
olyn.poole@fortworthtexas.gov

CITY OF FORT WORTH
Office of the City Attorney
100 Fort Worth Trail
Fort Worth, Texas 76102
P: (817) 392-7600

## CERTIFICATE OF SERVICE

I certify that on the 10th day of June 2025 a true and correct copy of the foregoing document was e-filed with the Clerk of the Court and electronically served upon all counsel of record in accordance with the Texas Rules of Civil Procedure.

/s/ Stephen A. Cumbie
STEPHEN A. CUMBIE

## CAUSE NO. 348-363561-25

| | | |
|---|---|---|
| **CITY OF ARLINGTON,** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **PECOS HOUSING FINANCE** | § | |
| **CORPORATION, a Texas nonprofit** | § | |
| **corporation; JOE DON BOBBITT, in his** | § | |
| **official capacity as Chief Appraiser of the** | § | **348th JUDICIAL DISTRICT** |
| **Tarrant Appraisal District,** | § | |
| | § | |
| *Defendants,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CITY OF FORT WORTH** | § | |
| | § | |
| *Plaintiff-Intervenor* | § | **TARRANT COUNTY, TEXAS** |

---

## VERIFICATION

---

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF TARRANT | § |

BEFORE ME, the undersigned Notary Public in and for the State of Texas on this day personally appeared Stephen A. Cumbie, Senior Assistant City Attorney for the City of Fort Worth, who, after being duly sworn, stated under oath that he has read the above Fourth Amended Petition in Intervention and its Application for a Temporary Restraining Order and Injunctive Relief; and

that every statement contained therein is within his personal knowledge and is true and correct.

_____
Stephen A. Cumbie, Affiant

**SUBSCRIBED AND SWORN TO BEFORE ME** on this 10th day of June 2025.

LAURA GREGORY
Notary Public, State of Texas
Comm. Expires 03-08-2028
Notary ID 4463814

_____
Notary Public in and for
The State of Texas



# TRAVELING HFCs IN THE CITY OF FORT WORTH

| PROPERTY ADDRESS | HOUSING FINANCE CORPORATION | DATE OF ACQUISITION | EXEMPTION STATUS | PROPERTY VALUE | FORT WORTH'S LOST REVENUE | TARRANT APPRAISAL DISTRICT WEBSITE LINK |
|---|---|---|---|---|---|---|
| 5200 VILLAGE LN | CAMERON COUNTY HOUSING FINANCE CORPORATION | 2022-06-13 | EXEMPT | $4,532,147.00 | $30,478.69 | https://www.tad.org/property?account=04705939 |
| 5221 VILLAGE LN | CAMERON COUNTY HOUSING FINANCE CORPORATION | 2022-06-13 | EXEMPT | $3,183,667.00 | $21,410.16 | https://www.tad.org/property?account=04705947 |
| 5300 VILLAGE LN | CAMERON COUNTY HOUSING FINANCE CORPORATION | 2022-06-13 | EXEMPT | $6,279,526.00 | $42,229.81 | https://www.tad.org/property?account=04705912 |
| 5301 VILLAGE LN | CAMERON COUNTY HOUSING FINANCE CORPORATION | 2022-06-13 | EXEMPT | $2,954,426.00 | $19,868.51 | https://www.tad.org/property?account=04705920 |
| 2324 MEADOWBROOK GARDENS DR | CAMERON COUNTY HOUSING FINANCE CORPORATION | 2025-01-17 | EXEMPT | $17,131,387.00 | $115,208.58 | https://www.tad.org/property?account=04849264 |
| 4500 CAMPUS DR | CAMERON COUNTY HOUSING FINANCE CORPORATION | 2022-12-01 | EXEMPT | $164,396,992.00 | $1,105,569.77 | https://www.tad.org/property?account=04981812 |
| 300 W. MORPHY ST | CAMERON COUNTY HOUSING FINANCE CORPORATION | 2022-09-30 | EXEMPT | $49,971,533.00 | $336,058.56 | https://www.tad.org/property?account=42332301 |
| 5301 NORTH TARRANT PKWY | MAVERICK COUNTY HOUSING FINANCE CORPORATION | 2024-10-09 | EXEMPT | $80,369,852.00 | $540,487.25 | https://www.tad.org/property?account=41652207 |
| 3391 WESTERN CENTER BLVD | PECOS HOUSING FINANCE CORPORATION | 2025-02-27 | EXEMPT | $41,184,002.00 | $276,962.41 | https://www.tad.org/property?account=07008937 |
| 5801 BRIDGE ST | PECOS HOUSING FINANCE CORPORATION | 2025-01-15 | EXEMPT | $28,579,464.00 | $192,196.90 | https://www.tad.org/property?account=04972759 |
| 6051 BRIDGE ST | PECOS HOUSING FINANCE CORPORATION | 2025-01-15 | EXEMPT | $22,355,436.00 | $150,340.31 | https://www.tad.org/property?account=04977848 |
| 6776 WESTCREEK DR | PECOS HOUSING FINANCE CORPORATION | 2024-12-19 | EXEMPT | $33,857,834.00 | $227,693.93 | https://www.tad.org/property?account=05628954 |
| 8901 S NORMANDALE ST | PECOS HOUSING FINANCE CORPORATION | 2025-02-15 | EXEMPT | $30,773,181.00 | $206,949.64 | https://www.tad.org/property?account=03435024 |
| 9051 S NORMANDALE ST | PECOS HOUSING FINANCE CORPORATION | 2025-02-15 | EXEMPT | $13,921,653.00 | $93,623.12 | https://www.tad.org/property?account=03435076 |
| 2188 E LOOP 820 | PLEASANTON HOUSING FINANCE CORPORATION | 2024-11-15 | EXEMPT | $29,852,508.00 | $200,758.12 | https://www.tad.org/property?account=01184954 |
| 637 SAMUELS AVE | PLEASANTON HOUSING FINANCE CORPORATION | 2025-01-24 | EXEMPT | $1,317,700.00 | $8,861.53 | https://www.tad.org/property?account=42402920 |
| 637 SAMUELS AVE | PLEASANTON HOUSING FINANCE CORPORATION | 2025-01-24 | EXEMPT | $16,012,497.00 | $107,684.04 | https://www.tad.org/property?account=42402938 |
| 637 SAMUELS AVE | PLEASANTON HOUSING FINANCE CORPORATION | 2025-01-24 | EXEMPT | $53,196,755.00 | $357,748.18 | https://www.tad.org/property?account=42402946 |
| 8100 N RIVERSIDE DR | PLEASANTON HOUSING FINANCE CORPORATION | 2024-10-31 | EXEMPT | $58,188,517.00 | $391,317.78 | https://www.tad.org/property?account=4110475 |
| 9632 BERKSHIRE LAKE BLVD | PLEASANTON HOUSING FINANCE CORPORATION | 2025-03-18 | EXEMPT | $69,600,728.00 | $468,064.90 | https://www.tad.org/property?account=42729627 |
| BLUE MOUND RD | PLEASANTON HOUSING FINANCE CORPORATION | 2025-01-27 | EXEMPT | $451,037.00 | $3,033.22 | https://www.tad.org/property?account=42721201 |
| 2200 TAXCO RD | CAMERON COUNTY HOUSING FINANCE CORPORATION | 2025-05-22 | NO EXEMPTIONS | $10,381,386.00 | $69,814.82 | https://www.tad.org/property?account=04691865 |
| 2006 TAXCO RD | CAMERON COUNTY HOUSING FINANCE CORPORATION | 2025-05-22 | NO EXEMPTIONS | $23,876.00 | $160.57 | https://www.tad.org/property?account=05968631 |
| 500 E LOOP 820 | LA VILLA HOUSING FINANCE CORPORATION | 2025-04-04 | NO EXEMPTIONS | $24,554,971.00 | $165,132.18 | https://www.tad.org/property?account=04325893 |
| 8925 RANDOL MILL RD | LA VILLA HOUSING FINANCE CORPORATION | 2025-04-30 | NO EXEMPTIONS | $27,110,245.00 | $182,316.40 | https://www.tad.org/property?account=05550939 |
| 14301 CENTRE STATION DR | MAVERICK COUNTY HOUSING FINANCE CORPORATION | 2025-02-03 | NO EXEMPTIONS | $101,117,467.00 | $680,014.97 | https://www.tad.org/property?account=41424360 |
| 6500 BOCA RATON BLVD | MAVERICK COUNTY HOUSING FINANCE CORPORATION | 2025-01-17 | NO EXEMPTIONS | $12,398,461.00 | $83,379.65 | https://www.tad.org/property?account=05661846 |
| 6501 BOCA RATON BLVD | MAVERICK COUNTY HOUSING FINANCE CORPORATION | 2025-01-17 | NO EXEMPTIONS | $23,082,702.00 | $155,231.17 | https://www.tad.org/property?account=05662486 |
| 13450 ALTA VISTA RD | MAVERICK COUNTY HOUSING FINANCE CORPORATION | 2025-04-30 | NO EXEMPTIONS | $42,412,302.00 | $285,222.73 | https://www.tad.org/property?account=07830262 |
| 113 WESTERN SWING WAY | PECOS HOUSING FINANCE CORPORATION | 2025-04-09 | NO EXEMPTIONS | $78,184,484.00 | $525,790.65 | https://www.tad.org/property?account=42699604 |
| 1505 HOMEDALE DR | PECOS HOUSING FINANCE CORPORATION | 2025-03-19 | NO EXEMPTIONS | $25,793,728.00 | $173,462.82 | https://www.tad.org/property?account=04402324 |
| 5600 COTSWOLD HILLS DR | PECOS HOUSING FINANCE CORPORATION | 2025-03-24 | NO EXEMPTIONS | $27,759,851.00 | $186,685.00 | https://www.tad.org/property?account=00538744 |
| 6250 GRANBURY CUT OFF RD | PECOS HOUSING FINANCE CORPORATION | 2025-04-09 | NO EXEMPTIONS | $24,791,114.00 | $166,720.24 | https://www.tad.org/property?account=05503396 |
| 6991 ANDERSON BLVD | PECOS HOUSING FINANCE CORPORATION | 2025-03-19 | NO EXEMPTIONS | $228,690.00 | $1,537.94 | https://www.tad.org/property?account=06468071 |
| 7040 JOHN T WHITE | PECOS HOUSING FINANCE CORPORATION | 2025-03-19 | NO EXEMPTIONS | $25,851,059.00 | $173,848.37 | https://www.tad.org/property?account=05654395 |
| 8900 RANDOL MILL RD | PECOS HOUSING FINANCE CORPORATION | 2025-03-24 | NO EXEMPTIONS | $45,043,125.00 | $302,915.02 | https://www.tad.org/property?account=05682045 |
| 6130 OAKLAND HILLS DR | PECOS HOUSING FINANCE CORPORATION | 2025-04-30 | NO EXEMPTIONS | $17,301,375.00 | $116,351.75 | https://www.tad.org/property?account=04855280 |
| 6351 VEGA DR | PECOS HOUSING FINANCE CORPORATION | 2025-05-16 | NO EXEMPTIONS | $22,346,595.00 | $150,280.85 | https://www.tad.org/property?account=04885953 |
| 3665 MARINE CREEK PKWY | PECOS HOUSING FINANCE CORPORATION | 2025-05-16 | NO EXEMPTIONS | $44,848,502.00 | $301,606.18 | https://www.tad.org/property?account=42793929 |
| 6032 TRAVERTINE LN | PLEASANTON HOUSING FINANCE CORPORATION | 2025-03-07 | NO EXEMPTIONS | $21,211,566.00 | $142,647.78 | https://www.tad.org/property?account=42220783 |
| 6032 TRAVERTINE LN | PLEASANTON HOUSING FINANCE CORPORATION | 2025-03-07 | NO EXEMPTIONS | $51,931,479.00 | $349,239.20 | https://www.tad.org/property?account=42220791 |
| 8900 COTTONWOOD VILLAGE DR | PLEASANTON HOUSING FINANCE CORPORATION | 2025-02-06 | NO EXEMPTIONS | $24,929,564.00 | $167,651.32 | https://www.tad.org/property?account=06493777 |




City of
Fort Worth

**FILED**
9:39 o'clock

**EXHIBIT**
B

CAUSE NO. 25-0488-C425

MAR 05 2025

*Lisa David*

WILLIAMSON COUNTY, SIENA
MUNICIPAL UTIILTY DISTRICT NO. 1,
and SIENA MUNICIPAL UTIILTY
DISTRICT NO. 2,
    *Plaintiffs,*

v.

THE CAMERON COUNTY HOUSING
FINANCE CORPORATION,
    *Defendant.*

§
§
§
§
§
§
§
§
§
§
§

IN THE DISTRICT COURT, Williamson Co., TX

425 JUDICIAL DISTRICT

WILLIAMSON COUNTY, TEXAS

## TEMPORARY RESTRAINING ORDER

After considering the application for a temporary restraining order filed by Plaintiffs in the above-styled matter, the pleadings, and the evidence, the Court finds that—

1. There is a current controversy over Defendant Cameron County Housing Finance Corporation's ("CCHFC") efforts to seek exemption from ad valorem taxes for properties located in Williamson County, including the following real properties:

    a. Lot 1, Siena Section 30, according to the map or plat thereof recorded as Document No. 2020037410 in the Official Public Records of Williamson County, Texas, located at 6531 CR 110, Round Rock, Texas, 78655. That property is a 13.677-acre tract of land on which a multi-family apartment project known as Siena Round Rock Apartments has been built ("Siena Round Rock").

    b. Lot 2, Block A, Siena South, according to the map or plat thereof recorded as Document No. 20200099820 in the Official Public Records of Williamson County, Texas, located at 5540 Sofia Place, Round Rock, Texas 78665. That Property is a

Temporary Restraining Order – Page 1 of 3

Exhibit 1

15.0496-acre tract of land on which a multi-family apartment project known as The Sommery has been built ("The Sommery").

2. As alleged in the Plaintiffs' petition and supporting verification, CCHFC currently owns Sienna Round Rock, and intends to acquire The Sommery, and seeks to remove both properties from the Williamson Central Appraisal District ad valorem tax rolls, purportedly under Section 394.905 of the Texas Local Government Code.

3. Imminent harm and irreparable harm will result if CCHFC is permitted to acquire The Sommery and seek and obtain exemptions of Sienna Round Rock and The Sommery from the William Central Appraisal District ad valorem tax rolls. Specifically, if a temporary restraining order is not granted, imminent and irreparable harm will result to Plaintiffs since those properties within their jurisdictions will be removed from the tax rolls, which will immediately impact their fiscal budgeting and decrease the ad valorem taxes they otherwise could collect for these properties.

4. There is no adequate remedy at law because such damages or harm to Plaintiffs cannot be calculated.

5. An *ex parte* order, without notice to CCHFC, is necessary because there is not enough time to give notice to CCHFC, hold a hearing, and issue a restraining order before the imminent and irreparable injury, loss or damage occurs.

6. Therefore, the Court ORDERS that—

a. CCHFC, as well as its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with CCHFC, are prohibited from (i) acquiring real property in

**Temporary Restraining Order – Page 2 of 3**

Exhibit 1

Williamson County, including The Sommery; (ii) seeking or obtaining exemptions from ad valorem taxes for real property in Williamson County, including Siena Round Rock and The Sommery.

b.    The clerk shall issue notice to CCHFC that the hearing on Plaintiffs' request for temporary injunction is set for **March 13**, 2025 at **9:00** a.m./p.m. The purpose of the hearing shall be to determine whether this temporary restraining order should be made a temporary injunction pending a full trial on the merits.

c.    Plaintiffs are exempt from posting a bond pursuant to Section 6.001 of the Texas Civil Practice and Remedies Code and Section 49.066(f) of the Texas Water Code.

7.    This order expires on **March 14**, 2025 at **9:00**, **A**.m.

Signed:      March **5**, 2025

_____
Presiding Judge

**Temporary Restraining Order – Page 3 of 3**

Exhibit 1

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Laura Gregory on behalf of Stephen Cumbie
Bar No. 24056724
Laura.Gregory@fortworthtexas.gov
Envelope ID: 101852191
Filing Code Description: Amended Filing
Filing Description: City of Fort Worth's Fourth Amended Petition in
Intervention and Application for Temporary Restraining Order and
Injunctive Relief
Status as of 6/10/2025 4:34 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jeffrey MTillotson | | jtillotson@tillotsonlaw.com | 6/10/2025 3:41:10 PM | SENT |
| Jonathan RPatton | | jpatton@tillotsonlaw.com | 6/10/2025 3:41:10 PM | SENT |
| Robert Salinas | 17536000 | rjslawoffice@hotmail.com | 6/10/2025 3:41:10 PM | SENT |
| Roel Gutierrez | 24069842 | roelgutierrezlaw@gmail.com | 6/10/2025 3:41:10 PM | SENT |
| Blake Stribling | | bstribling@chasnoffstribling.com | 6/10/2025 3:41:10 PM | SENT |
| Jonathan Moss | | jonathan.moss@arlingtontx.gov | 6/10/2025 3:41:10 PM | SENT |
| Nena Chima-Tetteh | | nena.chima-tetteh@arlingtontx.gov | 6/10/2025 3:41:10 PM | SENT |
| Daniel Lecavalier | 24129028 | dlecavalier@chasnoffstribling.com | 6/10/2025 3:41:10 PM | SENT |
| Kim Decker | | kdecker@chasnoffstribling.com | 6/10/2025 3:41:10 PM | SENT |
| Liz Hansen | | lhansen@lsejlaw.com | 6/10/2025 3:41:10 PM | SENT |
| Kathryn Yukevich | 24133390 | kyukevich@tillotsonlaw.com | 6/10/2025 3:41:10 PM | SENT |
| Galen Gatten | | galen.gatten@arlingtontx.gov | 6/10/2025 3:41:10 PM | SENT |
| Eric Ruiz | | eruiz@lsejlaw.com | 6/10/2025 3:41:10 PM | SENT |
| Kira Lytle | | klytle@tillotsonlaw.com | 6/10/2025 3:41:10 PM | SENT |
| TJP Service | | tillotsonjohnsonpatton@gmail.com | 6/10/2025 3:41:10 PM | SENT |
| Lisa O'Sullivan | | losullivan@chasnoffstribling.com | 6/10/2025 3:41:10 PM | SENT |
| JAMES EVANS | | JEVANS@LSEJLAW.COM | 6/10/2025 3:41:10 PM | SENT |
| Rosa Perez | | rosaperez@cityoflavilla.org | 6/10/2025 3:41:10 PM | SENT |
| Jannet Alarcon | | jannet.alarcon@fortworthtexas.gov | 6/10/2025 3:41:10 PM | SENT |
| Erica Salas | | erica.salas@arlingtontx.gov | 6/10/2025 3:41:10 PM | SENT |
| Alexander JLindvall | | alexander.lindvall@arlingtontx.gov | 6/10/2025 3:41:10 PM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Laura Gregory on behalf of Stephen Cumbie
Bar No. 24056724
Laura.Gregory@fortworthtexas.gov
Envelope ID: 101852191
Filing Code Description: Amended Filing
Filing Description: City of Fort Worth's Fourth Amended Petition in Intervention and Application for Temporary Restraining Order and Injunctive Relief
Status as of 6/10/2025 4:34 PM CST

Case Contacts

| Alexander JLindvall | | alexander.lindvall@arlingtontx.gov | 6/10/2025 3:41:10 PM | SENT |
|---|---|---|---|---|
| Joe DonBobbitt | | jdbobbitt@tad.org | 6/10/2025 3:41:10 PM | SENT |
| Joseph Nguyen | | joseph.nguyen@arlingtontx.gov | 6/10/2025 3:41:10 PM | SENT |
| Chandra Jackson | | chandra.jackson@fortworthtexas.gov | 6/10/2025 3:41:10 PM | SENT |
| Steve ACumbie | | stephen.cumbie@fortworthtexas.gov | 6/10/2025 3:41:10 PM | SENT |
| Christopher BMosley | | chris.mosley@fortworthtexas.gov | 6/10/2025 3:41:10 PM | SENT |
| Olyn Poole | | olyn.poole@fortworthtexas.gov | 6/10/2025 3:41:10 PM | SENT |
| THE CITY OF FORT WORTH | | Chandra.Jackson@fortworthtexas.gov | 6/10/2025 3:41:10 PM | SENT |
| THE A.CITY OF FORT WORTH | | stephen.cumbie@fortworthtexas.gov | 6/10/2025 3:41:10 PM | SENT |

# EXHIBIT D

FILED
TARRANT COUNTY
5/29/2025 4:51 PM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 348-364135-25

| | | |
|---|---|---|
| CITY OF HALTOM CITY, TEXAS | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| PECOS HOUSING FINANCE | § | 348th JUDICIAL DISTRICT |
| CORPORATION, a Texas nonprofit | § | |
| corporation, TARRANT APPRAISAL | § | |
| DISTRICT, and CARA TURN, | § | |
| MARIBEL ALVAREZ, AND IRENE | § | |
| DOMINGUEZ, in their official | § | |
| capacities as Board Members of Pecos | § | |
| Housing Finance Corporation. | § | |
| *Defendants.* | § | TARRANT COUNTY, TEXAS |
| | § | |
| | § | |
| | § | |

## PLAINTIFF'S FIRST AMENDED APPLICATION FOR TEMPORARY INJUNCTION AND RESPONSE TO DEFENDANTS' PLEA TO THE JURISDICTION

TO THE HONORABLE MEGAN FAHEY, JUDGE:

The City of Haltom City, Texas, ("Haltom City" or "the City"), Plaintiff, files this its First Amended Application for Temporary Injunction and Response to Defendants' Plea to the Jurisdiction and in support of which, respectfully shows the Court the following:

### I.
### BACKGROUND

This case involves an abuse of the Texas Housing Finance Corporations Act, Tex. Local Gov't Code §§ 394.001 *et seq.* ("The Act"). Pecos Housing Finance Corporation ("Pecos HFC") – a housing corporation located in and created by a small town that is 400 miles away from the location of the property in question – seeks to obtain a full tax exemption on a large multi-family development located in the City of Haltom City, Texas. Pecos HFC receives a monetary kickback while causing the loss of millions of dollars in real property value from the local tax base.

Plaintiff's First Amended Application for Temporary Injunction and
Response to Defendants' Plea to the Jurisdiction                                    PAGE 1

Pecos HFC's scheme, which is in direct contravention of the Act, consists of the following machinations: a private developer acquires land for a new multifamily development (or acquires an already-existing multifamily development as in this case) in a city other than Pecos, Texas; the private developer then conveys that property to Pecos HFC; Pecos HFC, as the new owner, then applies for and receives a 100% tax exemption; and Pecos HFC then leases that now-exempt property to a private landlord (oftentimes the same developer who originally purchased the property), who then shares the profits with Pecos HFC. The upshot of this unethical and unlawful scheme is that the developer and landlord get a massive tax exemption, Pecos HFC gets to collect fees and a portion of the development's profits, and the other city (in this case, Haltom City) bears 100% of the downside.

While the City supports the creation of affordable housing opportunities for its residents, which is a worthy mission, Pecos HFC improperly seeks to deprive the elected officials of Haltom City – where these projects are located – from engaging in the critical cost-benefit analysis necessary to determine whether the public benefits of these multifamily housing projects are worth the elimination of tax revenues that are otherwise due to the local community. Further, the City is also deprived of any oversight over the multifamily housing project to include whether affordable housing is actually being provided to low and moderate-income tenants as required under the Act.

In short, a tiny housing finance corporation, located 400 miles away in a town with less than 13,000 residents, has singlehandedly reduced Haltom City's yearly tax revenue by well over a quarter of a million dollars while it rakes in undeserved fees and profits from real property located in Haltom City. Further, the City bears all costs for providing services to the property at issue while Pecos HFC obtains the financial windfall. Additionally, the City of Pecos, Texas then admittedly unlawfully diverts its ill-gotten gains to its general fund rather than use these funds for

providing affordable housing services for its own residents in violation of the Act. Accordingly, the City now brings this lawsuit to enforce its statutory rights under Chapter 394 of the Texas Local Government Code. The City also seeks injunctive relief to stop Pecos HFC's and its Board members' unlawful behavior before they do any further irreversible damage to Haltom City's tax base, and to stop the Tarrant Appraisal District ("TAD") from granting tax exemptions requested by Pecos HFC regarding properties located in Haltom City.

## II.
## FIRST AMENDED APPLICATION FOR TEMPORARY INJUNCTION

The City respectfully requests that this Court enter a temporary injunction order that prohibits (1) Pecos HFC and Defendant Board Members Cara Turn, Maribel Alvarez, and Irene Dominguez (collectively, the "Pecos HFC Defendants") from purchasing additional property in the City of Haltom City and (2) all Defendants from requesting, obtaining, granting, or receiving tax-exemptions for property located in Haltom City. In support, the City shows the following.

### A.    The Texas Housing Finance Corporations Act.

The Texas Housing Finance Corporations Act ("the Act") found in Chapter 394 of the Texas Local Government Code was passed in 1979 to help facilitate the development of low and moderate income housing. Tex. Local Gov't Code §§ 394.001 *et seq.*; see also Tex. Local Gov't Code § 394.002(a) (the Act's purpose is to "provide a means to finance the cost of residential ownership and development that will provide decent, safe, and sanitary housing at affordable prices for residents of local governments.").

To help create more low and moderate income housing, the Act empowers local governments to create Housing Finance Corporations ("HFCs")—nonprofit organizations, comprised of local officials, that help coordinate and facilitate affordable housing projects. *See* Tex. Local Gov't Code §§ 394.002, 394.011(a), 394.032. And because HFCs are (at least in

theory) furthering a public purpose, the Act provides that HFC-owned properties and the income derived from those properties are tax-exempt. Tex. Local Gov't Code § 394.905 ("The housing finance corporation, all property owned by it, the income from the property, all bonds issued by it, the income from the bonds, and the transfer of the bonds are exempt, as public property used for public purposes, from license fees, recording fees, and all other taxes imposed by this state or any political subdivision of this state.").

HFCs are commonly a part of public/private real estate partnerships, in which a private developer acquires land for a new development or acquires an existing multifamily project and then conveys it to an HFC, which then acquires tax-exempt status for the property and leases the property to a private landlord who, in turn, pays fees to the HFC and shares the profits generated by the property with the HFC. Because the Act allows for such an enormous tax benefit, it provides two specific restrictions on what residential developments an HFC can tax-exempt: (1) a residential development can receive tax exemption from an HFC only if at least 90% of the development "is for use by or is intended to be occupied by persons of low and moderate income," as defined by the statute, Tex. Local Gov't Code § 394.004; and (2) the residential development "must be *located within the local government*." Tex. Local Gov't Code § 394.903 (emphasis added).

An HFC, in other words, can obtain tax-exempt status for a residential development only if the development is located within the HFC's local jurisdiction and is actually used to house low or moderate income individuals. Tex. Local Gov't Code §§ 394.004, 394.903. Here, Pecos HFC has not complied with either mandatory requirement for tax-exemption.

**B.      The Formation of Pecos HFC.**

Pecos HFC is a governmental entity formed under the authority of the Act for the purposes of financing and promoting affordable housing. According to Pecos HFC's Certificate of

Formation filed with the Texas Secretary of State, a copy of which is attached hereto as **Exhibit 1**, Pecos HFC was incorporated by the City of Pecos, Texas in 2023. [Exhibit 1]. Pecos HFC is governed by a Board of Directors, in which all the powers of the HFC are vested. Tex. Loc. Gov't Code § 394.021. A majority of the directors constitutes a quorum. Id. The directors may take action by a majority vote when a quorum is present. Id. Per the Restated Certificate of Formation filed with the Texas Secretary of State, a copy of which is attached hereto as **Exhibit 2**, the Board of Pecos HFC is comprised of the members of the governing body of the City of Pecos, Texas. [Exhibit 2, Art. VII, p. 3]. Accordingly, the current board members are: Cara Turn, Maribel Alvarez, and Irene Dominguez.

**C.     Pecos HFC is exempting properties in Haltom City—400 miles outside its jurisdiction—without complying with the 90%-income-threshold under the Act.**

As set forth in the affidavit of City Director of Finance Stormy Johnson, a copy of which is attached hereto as **Exhibit 3**, Pecos HFC recently acquired Jensen Fossil Creek Apartments, located at 5500 N. Beach St., Haltom City, Texas 76137 – an already-built, upscale apartment complex located in Haltom City. [Exhibit 3 at ¶ 2]. A copy of TAD records for this property is attached hereto as **Exhibit 4.** The legal description of this property follows:

> Lot 4R1, Block J, of FOSSIL RIDGE ADDITION, LOT 4R1 & LOT 4R1, BLOCK J, an subdivision to the City of Haltom City, Tarrant County, Texas, according to the Plat recorded under Clerk's File No. D223148182, Official Public Records of Tarrant County, Texas.

[Exhibit 3 at ¶ 2]. Upon information and belief, after receiving that exemption, Pecos HFC has leased the complex to a private landlord and will collect a share of that complex's profits.

Pecos HFC has ignored the statutory restrictions by giving a tax exemption to a large, multifamily housing development in Haltom City without Haltom City's knowledge, input, or approval. [Exhibit 3 at ¶ 3]. Indeed, Pecos HFC neglected to contact any City elected officials or

staff before seeking to acquire property, engaging in residential development in the City, and removing the property from the tax rolls. Pecos HFC's silence is unsurprising, however, as there can be no justification for its scheme. As discussed in more detail *infra,* Pecos HFC cannot engage in residential development, or grant tax-exemption status to property located outside of its jurisdictional limits of the Town of Pecos City, Texas, without the approval of the City. The Jensen Fossil Creek property is located 400 miles away from the city limits of the Town of Pecos City, Texas.

Additionally, Jensen Fossil Creek Apartments is not entitled to tax-exemption. Upon information and belief, Jensen Fossil Creek Apartments does not lease 90% of its available units to persons of low and moderate income. With fees and rent, a three-bedroom apartment in this complex costs over $2,000 per month, and a two-bedroom is only slightly less expensive.[1] Further, Jensen Fossil Creek Apartments provides no information on its website about affordable housing or income requirements. Id. This complex also does not meet the 90%-income-housing threshold needed to receive an exemption under the Act. See Tex. Local Gov't Code § 394.004 (providing that a residential development can receive tax exemption from an HFC only if at least 90% of the development "is for use by or is intended to be occupied by persons of low and moderate income.").

The City has been damaged as a result of Defendants' actions. Specifically, Pecos HFC's illegal tax-exemption scheme has removed millions of dollars from Tarrant County taxing units' tax rolls. The 2025 appraised value for this Property is $97,235,244. [Exhibit 3 at ¶ 4; Exhibit 4, p. 2]. Consequently, the property's tax-exempt status has resulted in tax revenue loss to the following taxing units: The City of Haltom City; Tarrant County; JPS Hospital District; Birdville Independent School District; and Tarrant County Community College. [Exhibit 3 at ¶ 5]. Because

---

[1] https://www.jensenfossilcreek.com/

of the tax exemption, a total of $57,342.25 in tax revenue had to be refunded by the taxing units for 2024. [Exhibit 3 at ¶ 6]. Additionally, these taxing units will lose a total of $2,198,787.38 in tax revenue in 2025. [Exhibit 3 at ¶ 5]. Birdville ISD alone will lose $1,165,169.93 in annual tax revenue as a result of Pecos HFC's improper claim of tax-exempt status on the Haltom City apartment complex. [Exhibit 3 at ¶ 5].

In regards to the City, it has lost $14,726.08 in tax revenue for 2024 and will lose an additional $546,671.32 in tax revenue in 2025, based upon the appraised value of the property and the City's adopted tax rate of .580727/$100. [Exhibit 3 at ¶¶ 4, 6]. In other words, by improperly exempting just one apartment complex in Haltom City, Pecos HFC caused Haltom City to lose over half a million dollars, annually, in tax revenue, and there is no clear path for Haltom City (or other affected local entities) to recoup that loss. [Exhibit 3 at ¶ 4]. This equals an estimated 2.31% of Haltom City's annual ad valorem tax revenue. [Exhibit 3 at ¶ 4]. Yet the City still incurs the cost of providing essential public services to the property, including police, fire protection, code enforcement, street maintenance, etc.; while Pecos HFC, an absent landlord, reaps all financial benefits.

This is a widespread problem across the state. The City of Euless, for example, has seen at least a 2% drop in its overall annual revenue after a *single* apartment complex received tax-exempt status from the Cameron County HFC.[2] Dallas, Fort Worth, McKinney, Irving, Lewisville, and other north Texas cities have reported millions of dollars in total lost tax revenue.[3] Typically, these

---

[2] Andrea Lucia, *Euless Loses 2 Percent of Revenue to Controversial Tax Break Approved in Faraway County*, CBS News (Feb. 21, 2024) available at https://www.cbsnews.com/texas/news/euless-loses-2-percent-of-revenue-to-controversial-tax-break-approved-in-faraway-county/.

[3] Andrea Lucia, *Housing Group Made Millions Getting Tax Breaks for Developers, Costing Cities and Schools Even More*, CBS News (Dec. 22, 2023) available at https://www.cbsnews.com/texas/news/housing-group-made-millions-getting-tax-breaks-for-developers-costing-cities-and-schools-even-more/.

out-of-jurisdiction HFCs are often bestowing tax-exempt status to already-built structures (not new projects), and many of the exempted properties are not even affordable housing projects; they are typical for-profit apartments and condos, usually located in upmarket neighborhoods, that do not offer reduced rent, housing vouchers, or other benefits to low-income applicants.[4]

Because of the widespread nature of this practice, there has been a strong legislative push to (even more) explicitly outlaw this sort of tax-exemption scheme. See H.B. No. 21.[5]  Upon information and belief, because the Legislature intends to take strong action to prevent these illegal schemes, HFCs, such as Pecos HFC, are scrambling to acquire multiple out-of-jurisdiction projects.

**D.      A Temporary Injunction is Necessary to Maintain the Status Quo, and to Prevent Continued Unlawful Action, because the City Has a Probable Right to Relief and Is Faced with Imminent Irreparable Harm.**

To stop Pecos HFC from closing on the purchase of any more properties located in Haltom City, the City asks this Court for a temporary injunction that prohibits Pecos HFC from (a) closing on the purchase of any properties located in Haltom City, and (b) requesting, approving and/or obtaining any tax exemptions on Haltom City properties. The City further requests a temporary injunction that prohibits TAD from granting tax exemptions requested by Pecos HFC regarding any properties located in Haltom City, to include Jensen Fossil Creek Apartments.  "To obtain a temporary injunction, [an] applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) probable, imminent, and irreparable injury in the interim." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex.

---

[4] *Id.* (documenting that an out-of-town HFC purchased an apartment complex in a "luxurious community" in Irving and that the tenants' rents went *up* significantly under the HFC's ownership).

[5] https://legiscan.com/TX/text/HB21/id/3053018.

2002). "Whether to grant or deny a temporary injunction is within the trial court's sound discretion," and an order granting injunctive relief will be reversed on appeal only if "the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion." *Id.* An applicant has a probable right to relief if it has a cause of action for which relief may be granted. *Universal Health Services, Inc. v. Thompson*, 24 S.W.3d 570, 577-78 (Tex. App.-Austin 2008, no pet.). Among other grounds, "[a] trial court may . . . grant injunctive relief ... when a dispute involves real property." *Shor v. Pelican Oil & Gas Mgmt.*, LLC, 405 S.W.3d 737, 750 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

All these elements are present. The City has pled a cause of action against Defendants: namely a declaratory action under the UDJA, an *ultra vires* claim against Pecos HFC board members, and a violation of the Texas Constitution. The City has shown it will likely be successful in this declaratory action, as the Act's plain language prohibits Pecos HFC's complained-of conduct. And, in the absence of injunctive relief, Pecos HFC will likely continue to close on the purchase of additional Haltom City properties and to apply for tax exemptions on those properties as well. Such actions would lead to an irreversible removal of ad valorem taxes from the local tax rolls. Simply put, this is precisely the sort of case in which equitable relief is warranted.

## The City has a probable right to relief against the Pecos HFC Defendants.

As detailed in the City's Second Amended Petition, the City has well-supported causes of action against Pecos HFC, and its board members, to establish and protect its rights in accordance with the Act and the Texas Constitution. Specifically, the City has brought a declaratory judgment action against the Pecos HFC Defendants pursuant to Civ. Prac. & Rem. Code § 37.003, regarding their violation of Texas Local Gov't Code Sections 394.005 and 394.903(a). (Second Amended Petition, pp. 10-15). Chapter 394 grants Texas cities with a population over 20,000, such as

Haltom City, the right to control whether Chapter 394 applies to property within the municipality. HFCs must receive approval of the governing body of the municipality (over 20,000 in population) before Chapter 394 may be applied to property located within the municipality. Tex. Local Gov't Code at § 394.005. Here, Pecos HFC purchased and claimed tax-exempt status for the property at Jensen Fossil Creek, which is located within the city limits of Haltom City, without first obtaining the City's approval as required by Section 394.005.

Further, Pecos HFC's scheme to obtain properties outside the jurisdictional limits of Pecos, Texas, runs afoul of the plain language of Section 394.903(a) of the Act, which states "[a] residential development covered by this chapter *must be located within the local government,*" Id. (emphasis supplied). Texas courts "interpret statutes by looking to their plain language and construing the text in light of the statute as a whole." *City of Austin v. Quinlan*, 669 S.W.3rd 813, 821 (Tex. 2023). In order to give effect to the Legislature's intent, Courts "enforce the plain meaning of statutory text, informed by its context." *Hegar v Health Care Serv. Corp.*, 652 S.W. 3rd 39, 43 (Tex. 2022).

In the context of Chapter 394 as a whole, "local government" in this case means the local government sponsor of the HFC, i.e. the City of Pecos, Texas. For example, sections 394.055(c) and 394.055(d) of the Act both use the phrase "the state, the local government, or any other municipality, county, or other municipal or political corporation or subdivision of the state." To replace the words "the local government" with "any municipality or county" in these clauses renders the phrase redundant. Section 394.902 uses the phrase "the governing body *of the local government that authorizes, sponsors, or otherwise participates in the creation of the housing finance corporation* shall cooperate...." (emphasis added). The plain reading of the use of "local government" throughout Chapter 394 further emphasizes the point that the Legislature meant the

local government sponsor of the HFC when it used the phrase "the local government." Accordingly, Chapter 394 is limited by its plain language to residential developments located within the jurisdiction of the sponsoring local government. As such, Pecos HFC cannot legally purchase, develop, and grant tax-exemptions for residential developments, such as Jensen Fossil Creek Apartments, which are outside its jurisdictional boundaries.

The case of *Walker v. U.S. Dep't of Housing & Urban Dev.*, 326 F.Supp. 2d 773, 777 (N.D. Tex. 2004) is instructive. There, the United States District Court for the Northern District of Texas held that:

> § 394.903(a), which applies to residential development by public facility corporations via § 394.004, restricts residential development to locations within the local government. "Local government" refers to any municipality or county, and in the context of a public facility corporation created by a housing authority, the housing authority's jurisdiction serves as an appropriate proxy for the limitation.

*Id.* at 477. Thus, the Court concluded that Section 394.903(a) restricts residential development to locations within the housing authority's jurisdiction. It would be absurd for the Act to allow an HFC created by one municipality to own and lease property in another municipality. Such a perverse scheme would allow a small town like Pecos, Texas to make decisions regarding real property located in another municipality, which results in the other municipality (Haltom City) losing 100% of the ad valorem tax value from the property. Pecos HFC has no ability to weigh that significant financial loss against the potential benefits of the project to the community, *which directly affects the residents of the City of Haltom City in a detrimental way.* Meanwhile, the traveling, out-of-jurisdiction HFC reaps a purely monetary windfall without any incentive for oversight by its sponsoring municipality, whose own tax revenues remain unaffected. Moreover, the underlying public purpose of the Act to provide for the creation of affordable housing by local

housing authorities goes unserved within the jurisdiction of the local government that sponsored the housing finance corporation.

In the alternative, to the extent Pecos HFC takes the position that, contrary to its plain language, the Act *does not* prohibit it from acquiring and seeking tax exemptions for properties in Tarrant County, *and* to the extent Pecos HFC prevails in such interpretation of the Act, the City alternatively requests a declaration from the Court that Pecos HFC's actions violate the Texas Constitution's rules against extra-jurisdictional taxation by seeking to impose a system of taxation on properties located outside of the boundaries of Atascosa County, Texas where the City of Pecos is located. The Texas Constitution requires that all property shall be assessed for taxation in the county where it is located. Tex. Const. Art. art. VIII, § 11. Specifically, a county's ad valorem taxation authority is limited to "property within their respective boundaries." Tex. Const. Art. VIII,. § 1-a. If the Act could be read to empower Pecos HFC to take properties outside of Atascosa County off of the tax rolls of other counties in Texas, this would violate the Texas Constitution's limits on the scope of Texas counties' taxing authority. (Original Petition, p. 15).

Accordingly, the City has meritorious claims against the HFC Pecos Defendants and seeks temporary injunctive relief prohibiting the Pecos HFC Defendants from purchasing or developing residential property in Haltom City and from requesting, obtaining, or bestowing tax exemptions on real property located in Haltom City.

### The City has a probable right to relief against the Pecos HFC board members.

Additionally, the City has brought a meritorious *ultra vires* claim against Defendants Cara Turner, Maribel Alvarez, and Irene Dominguez, in their role as Pecos HFC board members, for their approval of the illegal purchase and development of residential properties located in Haltom City and the application for tax-exempt status for same. (Original Petition, p. 15). "The *ultra vires*

doctrine applies when a government official's conduct is without legal or statutory authority." *Klumb v. Hous. Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 9 (Tex. 2015). Parties may obtain prospective declaratory and injunctive relief when an official: a) fails to perform a ministerial act; or b) acts without legal authority. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009). Here, the City requests prospective declaratory and injunctive relief to stop Pecos HFC from engaging in residential development outside the geographic boundaries of the local government that formed it, the City of Pecos, Texas, without first obtaining the approval of the City. As discussed *supra*, Pecos HFC failed to obtain approval from the City as required by Tex. Loc. Gov't Code § 394.005. Further, residential development by Pecos HFC is limited to the jurisdictional boundaries of the City of Pecos pursuant to Section 394.903(a). Because Pecos HFC acts through its Board of Directors, Plaintiff requests relief to prevent the *ultra vires* acts of the Board of Directors in acting without authority under Chapter 394 by applying it to the property at issue, to include declaratory and injunctive relief set forth herein.

### The City has a probable right to relief against TAD.

The City also has a meritorious cause of action against TAD. The Texas Tax Code allows a taxing unit to sue an appraisal district that appraises property for the unit to compel the appraisal district to comply with the provisions of [the Property Tax Code], rules of the comptroller, or other applicable law. *See* Texas Tax Code § 43.01. The City is a taxing unit for the property at issue, which was appraised by Tarrant Appraisal District. Accordingly, the City asks for a declaratory judgment from this Court declaring the Act does not allow Pecos HFC to purchase, develop, or to request, obtain, or bestow tax exemptions on real property located in Haltom City. Thus, TAD cannot grant a full tax exemption to Jensen Fossil Creek Apartments, or any other real property owned by Pecos HFC that is located in Haltom City, Texas. (Second Amended Petition pp. 13-14).

TAD's claim that it is entitled to governmental immunity and that the City was required to exhaust its administrative remedies, is addressed in Section III. below.

### In the absence of a temporary injunction, the City will suffer irreparable injury.

In the absence of such relief, the City will suffer irreparable injury for which no remedy at law exists without the protections of a temporary restraining order and injunctive relief. Pecos HFC, like many traveling, out-of-jurisdiction HFCs, is rushing to acquire properties outside its jurisdiction in a nefarious attempt to remove as many properties from other county tax rolls as possible before its misuse of the Act is stopped. See Madison Izler, *Tiny Texas cities rush to cut San Antonio tax deals as lawmakers eye changes,* San Antonio Express News, April 16, 2025, a copy of which is attached hereto as **Exhibit 5**. If its tactics are permitted with respect to the Jensen Fossil Creek property, the City, along with Birdville ISD and other local governmental units, will face the dire consequence of losing millions of dollars in ad valorem tax revenue. The removal of this property from the tax rolls would immediately affect the City's budgeting, thereby necessarily preventing the City from allocating that lost revenue to be used for public services. The impact of this lost revenue on Birdville ISD is over a million dollars a year. Likewise, the City will lose over half a million dollars in tax revenue each year, which totals an estimated 2.31% of its total annual tax revenue.

### III.
### RESPONSE TO DEFENDANTS' PLEA TO THE JURISDICTION

TAD has filed a Plea to the Jurisdiction that argues (1) TAD has governmental immunity from suits brought pursuant to the Declaratory Judgments Act; and (2) that the City failed to exhaust administrative remedies pursuant to the Texas Tax Code regulatory scheme. The Pecos HFC Defendants likewise argue that the City failed to exhaust administrative remedies. However, these arguments should be rejected for the following reasons.

**A.     TAD Does Not Have Immunity as Section 43.01 of the Texas Property Tax Code is an Express Waiver of Governmental Immunity.**

TAD does not have immunity to the instant suit. TAD correctly argues that governmental immunity bars declaratory judgment actions against the state and its political divisions absent a legislative waiver. See Tex. Tax Code § 6.01(c) ("An appraisal district is a political subdivision of the state."); *Falls Cty. Appraisal Dist. v. Burns*, No. 10-21-00019-CV, 2022 Tex. App. LEXIS 1895 (Tex.App.—Waco, March 23, 2022, pet. den'd). "UDJA claims requesting other types of declaratory relief are barred absent a legislative waiver of immunity with respect to the underlying action." *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 553 (Tex. 2019). In support, TAD also cites to the cases of *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009) and *Stiefer v. Moers*, No. 14-14-00617-CV, 2015 WL 6950104, at *3 (Tex. App.—Houston [14th Dist. Nov. 10, 2015, no pet.) (mem. op.), which are discussed in more detail below.

However, TAD ignores the plain language of Section 43.01 of the Texas Property Tax Code, which contains an express waiver of TAD's governmental immunity. Section 43.01 states that "[a] taxing unit may sue the appraisal district that appraises property for the unit to compel the appraisal district to comply with the provisions of this title, rules of the comptroller, *or other applicable law*." Tex. Tax Code § 43.01 (emphasis added). The plain language of this section permits a taxing unit to sue an appraisal district. *See Ashland Inc. v. Harris Cnty Appraisal Dist.*, 437 S.W.3d 50, 52-53 (Tex.App.—Houston [14th Dist.] 2014, pet. den'd) ("If a statute is worded clearly, we must honor its plain language, unless that interpretation would lead to absurd results."); *City of Dallas v. TCI W. End, Inc.*, 463 S.W.3d 53, 57 (Tex. 2015) ("As a general principle, we eschew construction of a statute that render any statutory language meaningless or superfluous."). Those cases cited by TAD do not address the application of Section 43.01. *City of El Paso v. Heinrich* involved a suit by a widow seeking to collect monies from the El Paso Fireman & Policemen's

Pension Fund. *See City of El Paso,* 284 S.W.3d at 369. *Stiefer v. Moers,* an unpublished case, also did not address whether Section 43.01 waived governmental immunity, and instead held that Section 41.45(f) did not waive a chief appraisal officer's entitlement to governmental immunity. *Stiefer,* No. 14-14-00617-CV at *11-13 (holding that pursuant to the plain language of Section 41.45(f), while the property owners are entitled to file a petition against the appraisal review board to compel a hearing, this section does not permit suit against a chief appraisal officer). Courtesy copies of both opinions are included in the attached appendix.

However, those courts that have analyzed Section 43.01 have found that it waives an appraisal board's governmental immunity. In *Blue Cactus Post, L.C. v. Dallas County Appraisal District,* 229 B.R. 379 (N.D.Tex. Bank. 1999), the district bankruptcy court concluded that the language of section 43.01 weighed against a finding of Eleventh Amendment (sovereign) immunity:

### 5. The DCAD's capacity to sue and be sued

The DCAD may, and in some instances must, be sued in its own name. Further, as provided in the Property Tax Code, "a taxing unit may sue the appraisal district that appraises property for the unit to compel the appraisal district to comply with the provisions of [the Property Tax Code], rules of the State Property Tax Board, or other applicable law." Therefore, this factor weighs against a finding of Eleventh Amendment immunity for the DCAD.

*Id.* at 385. It logically follows that the plain language of section 43.01 also weighs against any finding of *governmental immunity* under Texas law. *See City of Cleburne v. Cent. Appraisal Dist. of Johnson County,* No. 10-02-00154-CV, 2004 Tex. App. LEXIS 6088 (Tex.App.—Waco, July 7, 2004). In *City of Cleburne,* the Waco Court of Appeals reversed the granting of the Appraisal District's plea to the jurisdiction, holding that "Article 43.01 of the Tax Code authorizes the City to sue the Appraisal District to compel it to comply with the Code." *Id.* at *4.

The City has asserted a claim against the District to compel compliance with the Tax Code, a claim against the Board to prevent enforcement of an order claimed to

be void, and a claim against Cobblestone as a party whose rights would be affected by the judgment. Without regard to whether the claims have merit, we believe that the district court had jurisdiction over them. We reverse the trial court's Order of Dismissal and remand the cause for further proceedings.

*Id.* Courtesy copies of these opinions are also included in the attached appendix.

Based upon the persuasive authority of the opinions in *Blue Cactus* and *City of Cleburne* and the plain language of Section 43.10, the City respectfully submits that TAD does not have governmental immunity pursuant to Section 43.01 of the Texas Tax Code, this Court has jurisdiction over the instant action, and TAD's plea to the jurisdiction should be denied.

**B.      The City is Not Required to Exhaust Administrative Remedies Pursuant to the Texas Tax Code.**

Defendants claim that any claims brought pursuant to the Declaratory Judgments Act are barred because the administrative provisions of the Texas Property Tax Code are the exclusive means for parties to solve disputes in connection with the Texas Property Tax Code. In support of its administrative exhaustion argument, Defendants cite to Section 42.09, which states:

Sec. 42.09. REMEDIES EXCLUSIVE.

(a) Except as provided by Subsection (b) of this section, procedures prescribed by this title for adjudication of the grounds of protest authorized by this title are exclusive, and a property owner may not raise any of those grounds:

(1) In defense to a suit to enforce collection of delinquent taxes; or

(2) As a basis of a claim for relief in a suit by the property owner to arrest or prevent the tax collection process or to obtain a refund of taxes paid.

(b) A person against whom a suit to collect a delinquent property tax is filed may plead as an affirmative defense:

(1) If the suit is to enforce personal liability for the tax, that the defendant did not own the property on which the tax was imposed on January 1 of the year for which the tax was imposed;

(2) If the suit is to foreclose a lien securing the payment of a tax on real property, that the property was not located within the boundaries of the taxing unit seeking to foreclose the lien on January 1 of the year for which the tax was imposed.

(c) For purposes of this section, "suit" includes a counterclaim, cross-claim, or other claim filed in the course of a lawsuit.

Tex. Tax Code § 42.09 (emphasis supplied). However, the municipalities are not taxpayers protesting appraisals, and this exclusive remedy statute does not apply. Taxing units such as municipalities are generally excluded from the appraisal process, with the exception of the right to appeal "in limited circumstances" pursuant to Section 41.03. *Iraan-Sheffield Indep. Sch. Dist. v.. Kinder Morgan Prod. Co., LLC,* 657 S.W.3rd 525, 534 (Tex.App.—El Paso 2022, pet. den'd).

Indeed, Section 41.03 of the Texas Tax Code limits the right of appeal by a taxing unit to the following:

Section 41.03 Challenge by Taxing Unit.

(a) A taxing unit is entitled to challenge before the appraisal board:
    (1) an exclusion of property from the appraisal records;
    (2) a grant in whole or part *of a partial exemption,* other than an exemption under Section 11.35;
    (3) a determination that land qualified for appraisal as provided by Subchapter C, D, E, or H, Chapter 23; or
    (4) a failure to identify the taxing unit as one in which a particular property is taxable.

Tex. Tax Code § 41.03(a) (emphasis supplied). None of which are applicable to a municipality's challenge to the granting of a full tax exemption in violation of the Texas Housing Finance Corporations Act. The Pecos HFC Defendants argue that "Plaintiff's claims related to any properties 'removed" from the tax rolls plainly fall within the statutory framework of the Property Tax Code." (Defendants' Plea to the Jurisdiction, ¶ 4, p. 2). This is incorrect. The property at issue was not "excluded" from the appraisal records as set forth in Section 41.03(a). Indeed, it is clear from the attached TAD records, that the property at issue has been included in the appraisal

records and appraised accordingly. (Exhibit 4). Instead, TAD has granted a full tax-exemption on the property, which is NOT a ground for appeal pursuant to Section 41.03 of the Tax Code.

In any event, those cases upon which TAD relies in its Plea to the Jurisdiction are inapposite. *See In re ExxonMobil Corp.*, 153 S.W.3d 605, 614 (Tex.App.—Amarillo 2004, orig. proceeding); *Vexler v. Spencer*, No. 02-24-00305-CV, 2025 Tex. App. LEXIS 3060, at *8-9 (Tex.App.—Fort Worth, May 1, 2025, no pet. h.) (mem. op.); and *Fort Worth v. Pastusek Indus., Inc.*, 48 S.W.3d 366, 370-371 (Tex.App.—Fort Worth 2001, no pet.). *In re ExxonMobil Corp.* involved litigation filed by a taxing unit, arising from the "exclusion of property from appraisal records" as set forth in Section 41.03 of the Tax Code. *In re ExxonMobil Corp.*, 153 S.W.3d at 613-614 (concluding that fraud claim against oil companies regarding fraudulent undervaluing of mineral interest in property constituted property omitted from the appraisal roll). Both *Vexler* and *Pastusek* arose from a property owner's suit to recover excessive taxes collected and the exclusive remedy for "protests initiated by property owners" as set forth in Tex. Tax Code §§ 41.01(a)(1), 41.44(a), and 41.41. *Vexler*, 2025 Tex. App. LEXIS 3060 at *8; *Pastusek Indus.*, 48 S.W.3d at 369. *City of Austin v. Travis Cent. Appraisal Dist.*, 506 S.W.3d 607 (Tex.App.—Austin, no pet.) arose from a City's challenge to the level of appraisals for vacant land and a commercial real property and did not concern the granting of a full-tax exemption. *Id.* at 610.

In contrast, litigation challenging the traveling HFC scheme and subsequent full tax exemptions does not implicate the available grounds for appeal under Section 41.03, nor does it arise in connection with the Texas Property Tax Code. Instead, this litigation focuses upon the interpretation and application of the Housing Finance Corporations Act, Chapter 394 of the Texas Local Government Code. A district court's jurisdiction "consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive,

appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000) (citing Tex. Const. art. V, § 8). A district court "may hear and determine any cause that is cognizable by courts of law or equity and may grant any relief that could be granted by either courts of law or equity." Tex. Gov't Code Ann. § 24.008. For "courts of general jurisdiction . . . the presumption is that they have subject matter jurisdiction unless a showing can be made to the contrary." *Dubai Petroleum*, 12 S.W.3d at 75.

Pursuant to the plain language of Section 41.03 of the Tax Code, the appraisal review board does not have exclusive jurisdiction over a claim that the Housing Finance Corporations Act precludes granting a full tax exemption to a property obtained by a traveling HFC. *In re ExxonMobil Corp.*, 153 S.W.3d at 615 (". . . in an analysis of a claim of exclusive administrative agency jurisdiction, the administrative body is limited to the powers clearly and expressly given it and courts will not imply additional agency authority."); *accord Jim Wells County v. El Paso Prod. Oil & Gas*, 189 S.W.3d 861, 870 (Tex.App.—Houston [1st Dist] 2006, pet. den'd) (Pursuant to the Tax Code, a "pervasive regulatory scheme" vests the Board with exclusive original jurisdiction *over tax appraisal protests*.")(emphasis added). Moreover, Section 43.01 of the Texas Tax Code expressly provides that "[a] taxing unit may sue an appraisal district that appraised property for the taxing unit to compel compliance with . . . other applicable law." Tex. Tax Code § 43.01. Asking the appraisal board to opine on the applicability of the Texas Housing Finance Corporations Act would be futile. However, if this Court rules to the contrary, the City requests that this Court abate the instant action to afford the City the opportunity to exhaust its administrative remedies.

# IV.
## PRAYER FOR RELIEF

For these reasons, the City respectfully requests that this Court deny Defendants' Plea to the Jurisdiction, find that Defendant Tarrant Appraisal District does not have immunity to suit, and grant Plaintiff's application for temporary injunction that prohibits the following:

1. Defendant Pecos Housing Finance Corporation and Defendant Board Members Cara Turner, Maribel Alvarez, and Irene Dominguez from purchasing or approving the purchase of real property located in the City of Haltom City, Texas, without the written approval of the City of Haltom City, Texas;

2. Defendant Pecos Housing Finance Corporation and Defendant Board Members Cara Turner, Maribel Alvarez, and Irene Dominguez from requesting, approving, or obtaining tax exemptions for any real property located in the City of Haltom City, Texas, without the written approval of the City of Haltom City, Texas; and

3. Tarrant Appraisal District from granting tax exemptions requested by Pecos HFC regarding any real property located in the City of Haltom City, Texas.

Respectfully submitted,

/s/ Tammy Ardolf

Wayne K. Olson
Texas Bar No. 15276900
Email: wolson@toase.com

Tammy Ardolf
Texas Bar No. 90001536
Email: tardolf@toase.com

Marc A. Cavazos
Texas Bar No. 24128683
Email: mcavazos@toase.com

Members of the Firm of:
TAYLOR, OLSON, ADKINS, SRALLA,
& ELAM, L.L.P.
6000 Western Place, Suite 200
Fort Worth, Texas 76107-3654
Telephone: 817.332.2580
Facsimile: 817.332.4740

**ATTORNEYS FOR PLAINTIFF**
**CITY OF HALTOM CITY, TEXAS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been served on all parties, in accordance with the Texas Rules of Civil Procedure, on this 29th day of May, 2025.

*/s/ Tammy Ardolf*
Tammy Ardolf

## VERIFICATION

STATE OF TEXAS         §
                             §

TARRANT COUNTY      §

BEFORE ME, the undersigned authority, on this day personally appeared Rex Phelps, who, is over the age of eighteen (18) years; is of sound mind and suffers from no legal disabilities; is fully competent; and after being duly sworn, stated under oath that he is the City Manager for the City of Haltom City; that he has read the above First Amended Application for Temporary Injunction; that every statement contained in the First Amended Application for Temporary Injunction is within his personal knowledge and is true and correct; that he is the authorized representative for the City of Haltom City; and that he executed this verification for the purposes, and in the capacity, herein expressed.

SIGNED AND SWORN TO on this the **29** day of May, 2025.

Signature: _____

Printed Name: _REX PHELPS_

Title: _CITY MANAGER_

SWORN AND SUBSCRIBED TO BEFORE ME, the undersigned Notary Public on this the **29th** day of _May_____, 2025.

_____
Notary Public

**9|21|2025**
My Commission Expires:

IMELDA B. RODRIGUEZ
Notary Public, State of Texas
My Commission Expires
September 21, 2025
ID # 128055645-9

EXHIBIT 1

ARTICLES OF INCORPORATION

OF THE

PECOS HOUSING FINANCE CORPORATION

A HOUSING FINANCE CORPORATION AND INSTRUMENTALITY
OF THE TOWN OF PECOS CITY, TEXAS

F I L E D
In the Office of the
Secretary of State of Texas

APR 0 8 2016

Corporations Section

1.  The name of the corporation is the Pecos Housing Finance Corporation.

2.  The corporation is organized as a Texas nonprofit corporation pursuant to the provisions of the Texas Housing Finance Corporation Act, Tex. Local Government Code, Chapter 394 (1987), as amended, and the Texas Nonprofit Corporation Act, Tex. Rev. Civ. Stat. Ann. art. 1396-1.01 et seq. (1999), as amended.

3.  The period of duration of the Corporation is perpetual.

4.  The name of the initial registered agent of the Corporation is John Salcido, and the street address of the registered office of the Corporation is 2320 Teague Lane, Pecos Texas 79772.

5.  The Corporation is organized and will be operated exclusively for the benefit of, to perform certain functions of, to carry out the purposes of, and to act as an instrumentality of the Town of Pecos City, Texas. The Corporation is sponsored and created by the Town of Pecos City, Texas, under the Housing Finance Public Corporation Act with the broadest possible powers to assist it to acquire, construct, rehabilitate, renovate, repair, equip, furnish, finance, refinance, and place in service public facilities of the Town of Pecos City, Texas, for public use in the public interest. The Town of Pecos City, Texas, has specifically authorized the Corporation to act on its behalf to further the public purpose described in these Articles of Incorporation, and has approved the present Articles of Incorporation by the adoption of Resolution No. 15-05-8'R at a duly-called meeting of its City Council on MAY 14, 2015, as evidenced by a Certificate of Resolution attached hereto.

The purposes for which the Corporation is formed are exclusively public and charitable and consist, without limitation, of the following specific purposes:

(a)  Provide decent and affordable housing, including, without limitation, multifamily residential rental projects, single-family housing for rental, lease-purchase, and homeownership, and other residential facilities for low and moderate-income residents, including, without limitation, minorities, women, children, senior citizens, handicapped and disabled persons, and economically and socially-disadvantaged persons.

(b)  Acquire improved and unimproved real property from governmental agencies,

financial institutions, or other public or private entities that is economically and financially feasible for redevelopment and use as affordable housing.

(c) Issue tax-exempt bonds or notes to finance affordable housing on behalf of the Town of Pecos City, Texas, or to loan the proceeds of the tax-exempt obligations to other entities to accomplish the purposes of the Pecos Housing Finance Corporation.

(d) Promote community reinvestment by financial institutions to support the affordable housing needs of lower income residents through community development lending, affordable housing, or linked deposit programs; and further federal, state, and local affordable housing policy and programs through the use of commercial bank construction and permanent mortgage loans; private-activity, bank-qualified and qualified 501(c)(3), and "essential function" governmental tax-exempt bond financing; low income housing tax credits; HOME Investment Partnership Program and Community Development Block Grant program; FHA multifamily and single-family mortgage insurance; and other public and private sources of financing and credit enhancement for affordable housing.

(e) Develop decent and affordable housing by acquiring, constructing, rehabilitating, operating or disposing of housing projects or units; reduce substandard structures and vacant sites; and combat the deterioration of the community and contribute to its physical appearance; and to preserve the character, structures and community of the neighborhood and surrounding areas.

(f) Support, develop, and provide opportunities for low and moderate income residents to undertake business enterprises and to become self-sufficient by participating in education, job training, and employment programs to reduce their dependency on public benefits and to lessen their burden on government; and to provide social services to support the business enterprises, self-sufficiency, and family and community improvement efforts of low and moderate income residents.

(g) Ameliorate sickness, poverty, crime and environmental degradation; and lessen the burden of government through public and private nonprofit initiatives for affordable housing opportunities, neighborhood improvement, and community development.

(h) Support by gifts, contributions or assistance other non-profit corporations, community funds and foundations organized and operated exclusively for charitable, educational or scientific purposes, no part of the earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation.

In furtherance but not in limitation of the foregoing charitable, educational and scientific purposes, the Corporation shall have the following powers:

# ARTICLES OF INCORPORATION

(a) To acquire title to residential real property in order to lease, convey, or dispose of the property to the Housing Finance Corporation of the Town of Pecos City, Texas, or, on direction of the sponsor and in furtherance of its purposes, to any other entity;

(b) To acquire, purchase, improve, develop, construct, rehabilitate, finance, refinance, repair, equip, furnish, manage, and operate real property for affordable housing and to lease, option, sell, mortgage, and convey legal and equitable interests in real property to provide affordable housing opportunities to low and moderate income residents;

(c) To furnish administrative, management, financial and other advice, support, training and technical assistance to other residents and non-profit organizations to enable them to develop necessary skills and resources to promote affordable housing opportunities and family self-sufficiency;

(d) To conduct research, studies, analyses and publish reports of the economic and social problems affecting the availability and accessibility of decent and affordable housing for lower income and minority residents; and of the markets, products, services, skills, financial resources and other matters that may further the purposes of the Corporation;

(e) To conduct educational and other efforts to eliminate prejudice and discrimination in the business, housing development, and financial communities and to establish constructive relationships between the private, for-profit business sector, the private, non-profit sector and the public sector for the promotion of affordable housing opportunities;

(f) To support by gifts, contributions, loans, investments and other lawful forms of assistance other persons or organizations to accomplish the primary purposes of the Corporation, under policies and terms resolved by the Board of Directors; and

(g) To exercise all other rights and powers conferred upon corporations by the Texas Housing Finance Corporation Act and the Texas Non-Profit Corporation Act.

7. The Corporation is formed solely for public and charitable purposes. The Corporation is not organized and will not operate for the primary purpose of generating pecuniary gain or profit. It will not disburse any gains, profits or dividends to the directors, officers or any individual. The Corporation will be authorized and empowered to pay reasonable compensation for services rendered and to make payment and distribution to further its primary purposes. The property, assets, profits and net income of the Corporation are dedicated irrevocably to public and charitable purposes. No part of the profit or net income of the Corporation remaining after payment of its bonds and expenses in accomplishing its public purpose may benefit any person other than the sponsor of the Corporation.

8. No substantial part of the activities of the Corporation shall consist of carrying on of

propaganda or otherwise attempting to influence legislation. The Corporation shall not participate in any political campaign on behalf of any candidate for public office. Notwithstanding any other provisions of these Articles, the Corporation shall not carry on any other activities not permitted by a corporation exempt from federal income taxes under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or by a corporation that may receive contributions that are deductible under Section 170(c)(2) of the Internal Revenue Code of 1986, as amended.

9. The number of directors constituting the initial board of directors is three, and the names and addresses of the persons who are to serve as the initial board of directors until the appointment of their successors are:

|  |  |
|---|---|
| Member 1 - Maribel Alvarez<br>2320 Teague Lane<br>Pecos Texas 79772 | Member 2 - Jimmy Dutchover<br>2320 Teague Lane<br>Pecos Texas 79772 |
| Member 3 - Irene Dominguez<br>2320 Teague Lane<br>Pecos Texas 79772 | Secretary - John R. Salcido<br>2320 Teague Lane<br>Pecos, Texas 79772 |

a. To be qualified to serve as a director, a person must be a resident of the Town of Pecos City, Texas.

b. The manner of calling and holding meetings of the Board of Directors and other rules for governing the activities and operation of the Corporation will be stated in Corporate Bylaws. The Board of the Pecos Housing Finance Corporation must approve any amendments to the Corporate Bylaws.

10. The Corporation will not have members and is a nonstock corporation. The sponsor of the Corporation is the Town of Pecos City, Texas, and its street address is 110 E. 6th Street, Pecos, Texas 79772.

11. The name and street address of the incorporator, who is of majority age, is John Salcido, 2320 Teague Lane, Pecos, Texas 79772.

12. All real and personal property owned by the Corporation shall be held for the use and benefit of the Town of Pecos City, Texas, shall be devoted for public use, and shall be used exclusively in performance of charitable functions to be exempt, at the option of the Corporation, from taxation by the state of Texas, a municipality, or other political subdivision of the state under the Texas Housing Finance Corporation Act, or successor or other applicable laws.

13. Upon winding up and dissolution of the Corporation, the title to all funds and other real property and personal property of the Corporation when it dissolves automatically vests in the sponsor without further conveyance, transfer, or act, and all assets remaining after

ARTICLES OF INCORPORATION

payment of, or provision for payment of, all debts and liabilities of the Corporation will be distributed to or turned over to the Town of Pecos City, Texas for a public purpose.

14. Any amendments to the Articles of Incorporation must be approved by City Council of the Town of Pecos City, Texas, as required by the Texas Housing Finance Corporation Act, as amended.

IN WITNESS WHEREOF, I, the undersigned, the person named above as the incorporator, have executed these Articles of Incorporation this __26__ day of March 2015.

John Salcido

# Resolution No 15-05-01R

## Approval of Housing Finance Corporation- Pecos Housing Authority

**Whereas,** the Town of Pecos City urgently needs new housing, and

**Whereas,** the City Council has adopted an ongoing resolution outlining the local incentives available for development of such housing, and

**Whereas,** The creation of a Housing Finance Corporation operated and overseen by the Pecos Housing Authority would be yet one more tool to enable the use of both State and Federal assistance in addition to the local assistance already available.

**Now, therefore** be it resolved by the City Council of the Town of Pecos City, Texas this 14th day of May 2015 that the findings to this resolution are hereby in all things to approve and adopt the Pecos Housing Finance Corporation, Certificate of Incorporation, Articles of Incorporation and Bylaws, and the Initial Board members

**PASSED AND APPROVED** by the City Council of the Town of Pecos City on this the 14th day of May 2015.

Venetta Seals - Mayor

ATTEST:

Heather Ramirez – City Secretary

**EXHIBIT 2**

| | | |
|---|---|---|
| **Form 414**<br>**(Revised 09/13)**<br><br>Submit in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>FAX: 512/463-5709<br>**Filing Fee: See Instructions** | <br>**Restated Certificate of**<br>**Formation**<br>**With New Amendments** | This space reserved for office use.<br>**FILED**<br>In the Office of the<br>Secretary of State of Texas<br><br>**OCT 2 8 2024**<br><br>**Corporations Section** |

## Entity Information

The name of the filing entity is:

Pecos Housing Finance Corporation

State the name of the entity as currently shown in the records of the secretary of state. If the amendment changes the name of the entity, state the old name and not the new name.

The filing entity is a: (Select the appropriate entity type below.)

☐ For-profit Corporation            ☐ Professional Corporation

☑ Nonprofit Corporation            ☐ Professional Limited Liability Company

☐ Cooperative Association           ☐ Professional Association

☐ Limited Liability Company         ☐ Limited Partnership

The file number issued to the filing entity by the secretary of state is:   802433174

The date of formation of the filing entity is:   04/08/2016

## Statement of Approval

Each new amendment has been made in accordance with the provisions of the Texas Business Organizations Code. The amendments to the certificate of formation and the restated certificate of formation have been approved in the manner required by the Code and by the governing documents of the entity.

## Required Statements

The restated certificate of formation, which is attached to this form, accurately states the text of the certificate of formation being restated and each amendment to the certificate of formation being restated that is in effect, and as further amended by the restated certificate of formation. The attached restated certificate of formation does not contain any other change in the certificate of formation being restated except for the information permitted to be omitted by the provisions of the Texas Business Organizations Code applicable to the filing entity.

**RECEIVED**

**OCT 2 8 2024**

Form 414

**Secretary of State**

6

## Effectiveness of Filing (Select either A, B, or C.)

A. ☑ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of the future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

## Execution

The undersigned affirms that the person designated as registered agent in the restated certificate of formation has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date: _____10/22/2024_____

Pecos Housing Finance Corporation
Name of entity (see Execution instructions)

_____
Signature of authorized individual (see instructions)

John Salcido, Executive Director
Printed or typed name of authorized individual

Attach the text of the amended and restated certificate of formation to the completed statement form. Identify the attachment as "Restated Certificate of Formation of [Name of Entity]."

Form 414                                    7

# AMENDED AND RESTATED CERTIFICATE OF FORMATION OF THE

# PECOS HOUSING FINANCE CORPORATION

We, the undersigned natural persons, each of whom is at least 18 years of age and residents of the Town of Pecos City, Texas, as incorporators of a corporation under the Texas Housing Finance Corporation Act, Chapter 394, Local Government Code (the "*Act*"), to hereby adopt the following Amended and Restated Articles of Incorporation for such corporation:

## ARTICLE I

The name of the corporation is "Pecos Housing Finance Corporation" (the "*Corporation*").

## ARTICLE II

The corporation is a public nonprofit corporation

## ARTICLE III

The period of duration of the Corporation is perpetual.

## ARTICLE IV

The Corporation is organized solely to carry out the purposes of the Act and shall have and possess all powers enumerated in such Act, including the issuance of bonds and the power to pursue public purposes on behalf of the Town of Pecos City (or in any political subdivision or county located anywhere within the State of Texas if acceptable to the Board of Directors of the Corporation). Any such bonds shall not constitute an obligation of the Town of Pecos City, Texas, but shall be payable solely out of the revenues and receipts derived from any residential development or home mortgage financed by the bonds. The Town of Pecos City, Texas shall never be liable for the payment of principal or interest on any bonds issued by the Corporation.

## ARTICLE V

The Corporation shall have no members and is a nonstock corporation.

## ARTICLE VI

The street address of the initial registered office of the Corporation is 2320 Teague Drive, Pecos, Texas 79772, and the name of the initial registered agent at such address is John Salcido.

## ARTICLE VII

All powers of the Corporation shall be vested in a Board of Directors, each of whom shall be a member of the governing body of the Pecos Housing Finance Corporation. Directors shall serve without compensation except that they shall be reimbursed their actual expenses incurred in the performance of their official duties. All other matters pertaining to the internal affairs of the

Corporation shall be governed by the bylaws of the Corporation so long as such bylaws are not inconsistent with these Amended and Restated Articles of Incorporation or any law.

## ARTICLE VIII

The number of directors constituting the initial Board of Directors of the Corporation is three (3), all of whom shall serve for a term of five (5) years from the date of this Amended and Restated Certificate of Formation. The names and addresses of the directors, each of whom was a resident of the Town of Pecos City, Texas:

**Cara Turn**
2320 Teague Drive, Pecos, Texas 79772

**Maribel Alvarez**
2320 Teague Drive, Pecos, Texas 79772

**Irene Dominguez**
2320 Teague Drive, Pecos, Texas 79772

## ARTICLE IX

The Town of Pecos City Council approved this form of Amended and Restated Articles of Incorporation and same was adopted on October 21, 2024.

_(signature)_
**CARA TURN**

_(signature)_
**MARIBEL ALVAREZ**

_(signature)_
**IRENE DOMINGUEZ**

105

**EXHIBIT 3**

## AFFIDAVIT OF STORMY JOHNSON

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **TARRANT COUNTY** | § |

I, Stormy Johnson, declare under penalty of perjury that the following statements are based on my personal knowledge and are true and correct.

1.     I am the Director of Finance for the City of Haltom City, Texas. I have served in this role for the past two years. This affidavit concerns my personal knowledge related to the soon-to-be-filed lawsuit *City of Haltom City v. Pecos Housing Finance Corporation et al.*

2.     In early 2025, the City of Haltom City and I learned that Jensen Fossil Creek, a large multifamily apartment complex located in Haltom City, had been unexpectedly removed from the tax rolls, causing Haltom City to lose hundreds of thousands of dollars in expected property tax revenue. Haltom City and I later learned that this property received tax-exempt status from and was acquired by the Pecos Housing Finance Corporation ("Pecos HFC"), an entity sponsored by the Town of Pecos, Texas, with its principal place of business located in Pecos, Texas. Jensen Fossil Creek is located at 5500 N. Beach St., Haltom City, Texas 76137, and its legal description is as follows:

> Lot 4R1, Block J, of FOSSIL RIDGE ADDITION, LOT 4R1 & LOT 4R1, BLOCK J, an subdivision to the City of Haltom City, Tarrant County, Texas, according to the Plat recorded under Clerk's File No. D223148182, Official Public Records of Tarrant County, Texas.

This property was an already-built, upscale apartment complex located in Haltom City.

3.     The governing body for Haltom City, a municipality with more than twenty-thousand (20,000) inhabitants, did not provide approval for Pecos HFC to operate within Haltom City, nor was such approval requested by Pecos HFC.

4.     As documented by the Tarrant County Appraisal District records, Jensen Fossil Creek is appraised at approximately $97,235,244.00. Consequently, Haltom City's share of that lost ad valorem tax revenue amounts to approximately $564,671.32, based upon the appraised value of the property and the City's adopted tax rate of .580727/$100. This equals approximately 2.31% of Haltom City's estimated annual ad valorem tax revenue.

5.     In addition to Haltom City, other taxing entities will also suffer a loss of ad valorem tax revenue from Jensen Fossil Creek tax exemption provided by Pecos HFC. Upon information and belief, JPS Health Network, Tarrant County, Tarrant County College, and Birdville ISD will be affected by Jenson's Fossil Creek's tax exemption status and lose approximately $177,454.32; $182,316.08; $109,175.73; and $1,165,169.93 respectively in

estimated ad valorem tax revenue for a total of $2,198,787.38 in estimated lost tax revenue for 2025 alone.

6. Additionally, a total of $57,342.25 in tax revenue was refunded for 2024 ad valorem taxes. The City lost $14,726.208 in tax revenue for 2024 as well.

7. The tax-exemption practices utilized by Pecos HFC have already removed tens of millions of dollars from other Tarrant County taxing units' tax rolls and will certainly cause Haltom City to lose hundreds of thousands in annual tax revenue. If the Pecos HFC acquires further real property located in Haltom City and removes them from the tax rolls, it could have a significant and detrimental impact on Haltom City's budget.

Date: 4/29/25

Stormy Johnson, Director of Finance
City of Haltom City, Texas

Subscribed and sworn to before me on this 29th day of April, 2025.

Notary Public, State of Texas

IMELDA B. RODRIGUEZ
Notary Public, State of Texas
My Commission Expires
September 21, 2025
ID # 12805645-9

**EXHIBIT 4**



## LOCATION

**Address:** 5500 N BEACH ST
**City:** HALTOM CITY
**Georeference:** 14567-J-4R1
**Subdivision:** FOSSIL RIDGE ADDITION
**Neighborhood Code:** APT-Fossil Creek

**Latitude:** 32.8460974727
**Longitude:** -97.286911371
**TAD Map:** 2060-428
**MAPSCO:** TAR-050B



Google Map or type unknown

This map, content, and location of property is provided by Google Services.

## PROPERTY DATA

**Legal Description:** FOSSIL RIDGE ADDITION Block J Lot 4R1

**Jurisdictions:**
HALTOM CITY (027)
TARRANT COUNTY (220)
TARRANT COUNTY HOSPITAL (224)
TARRANT COUNTY COLLEGE (225)
BIRDVILLE ISD (902)

**State Code:** BC
**Year Built:** 2022
**Personal Property Account:** N/A
**Agent:** None
**Protest Deadline Date:** 5/15/2025

+++ Rounded.

* This represents one of a hierarchy of possible values ranked in the following order: Recorded, Computed, System, Calculated.

**Site Number:** 800086713
**Site Name:** JEFFERSON FOSSIL CREEK
**Site Class:** APTExempt - Apartment-Exempt
**Parcels:** 1
**Primary Building Name:** JEFFERSON FOSSIL CREEK / 43027850
**Primary Building Type:** Multi-Family
**Gross Building Area$^{+++}$:** 332,094
**Net Leasable Area$^{+++}$:** 323,191
**Percent Complete:** 100%
**Land Sqft$^{*}$:** 842,014
**Land Acres$^{*}$:** 19.3300
**Pool:** Y

## OWNER INFORMATION

**Current Owner:**
PECOS HOUSING FINANCE CORPORATION
**Primary Owner Address:**
2101 CEDAR SPRINGS RD SUITE 1525
STANDLY LAW GROUP PLLC
DALLAS, TX 75201

**Deed Date:** 12/18/2024
**Deed Volume:**
**Deed Page:**
**Instrument:** D224226515

## VALUES

This information is intended for reference only and is subject to change. It may not accurately reflect the complete status of the account as actually carried in TAD's database. Tarrant County Tax Office Account Information.



| Year | Improvement Market | Land Market | Total Market | Total Appraised |
|------|-------------------|-------------|--------------|-----------------|
| 2025 | $94,288,192 | $2,947,052 | $97,235,244 | $97,235,244 |
| 2024 | $63,164,899 | $2,947,052 | $66,111,951 | $66,111,951 |

Pending indicates that the property record has not yet been completed for the indicated tax year.

+ Appraised value may be less than market value due to state-mandated limitations of value increases.

## EXEMPTIONS / SPECIAL APPRAISAL

- PUBLIC PROPERTY 11.11

Per Texas Property Tax Code Section 25.027, this website does not include exemption information indicating that a property owner is 65 years of age or older for unauthorized individuals.

≡  **San Antonio Express-News**                              **e-Edition**      👤 **Account**

**JUST IN**                                                                    30m ago

## Texas Lottery Commission rules on third-party couriers selling tickets online

**Trending:**  Stephon Castle | Fatal truck fire | Fiesta weather | Carnival cruise fight

**BUSINESS // SAN ANTONIO REAL ESTATE**

# Tiny Texas cities rush to cut San Antonio tax deals as lawmakers eye changes

By **Madison Iszler**, *Staff Writer*

April 16, 2025

        



The Edcouch Community Housing Finance Corp. recently acquired the Acadia on the Lake complex shown here.
Google Earth

 Listen Now: **Tiny Texas cities rush to cut San Antonio tax dea**

1x

6:37

ıllıl Everlit

As Texas lawmakers move to crack down on them, government agencies created by elected officials in tiny cities in the Rio Grande Valley are hustling to strike deals with developers to snap up apartment complexes in San Antonio.





Skip Ad

0:38 / 0:45

Under the law that allows for such transactions, the housing finance corporations ostensibly are aiming to increase the supply of lower-priced housing at a time when residents are grappling with soaring costs. But their actions are wiping out chunks of annual tax revenue not for their communities but for San Antonio entities, including school districts, University Health and the Alamo Colleges District, and the affordability of the apartments provided in exchange for the tax breaks is questionable.

The Legislature could close the loopholes that allow the deals, but the agencies may be rushing to acquire properties — and collect the fees stemming from the transactions — in case the changes are not retroactive.

**ADVERTISEMENT**
Article continues below this ad

# Recent deals

The La Villa Housing Finance Corp., a nonprofit set up by officials in a city more than 200 miles away, acquired the Elevate at Huebner Grove complex in North San Antonio from a company affiliated with Viking Capital of Vienna, Va., in April, deed records show. The company would have been expected to pay about $445,000 this year in property taxes, according to the Bexar Appraisal District, but the deal would eliminate that bill because the nonprofit's ownership means it's publicly owned.

The Edcouch Community Housing Finance Corp., an agency based in a city next to La Villa, also in April acquired two apartment complexes in North San Antonio from limited liability companies affiliated with David Shippy of Austin-based Quantum Leap Property Management. Without the deal, the companies would pay nearly $1.7 million worth of property taxes this year, according to the appraisal district.

**RELATED:** Why are distant Texas agencies trying to take San Antonio apartments off tax rolls?

Some of Shippy's companies have faced criticism for substandard conditions at other complexes in San Antonio.

**ADVERTISEMENT**

Article continues below this ad

Ad removed. Details

In a rare move, the city of Leon Valley in 2022 sued a company affiliated with Shippy in an effort to force it to make repairs at the Vista del Rey Apartments, where tenants said they had dealt with a lack of hot water, unsafe stairways, roach infestations, crime and water leaks for years. Also in 2022, the family of a 7-year-old boy with severe disabilities sued the owner of the Axio Apartments, a company affiliated with Shippy, after the child died after exposure to black mold and mold spores.

Both of the Shippy properties involved in the deal with the Edcouch corporation, the Acadia on the Lake and Broadstone Colonnade apartments, are now on the market. The listings tout the complexes' partnership with the nonprofit, saying the property tax exemption would substantially increase annual returns for prospective buyers. The listings also describe the complexes as "value add" opportunities, meaning buyers could reap higher profits by making improvements and charging higher rents.

Documents for the three complexes describe at least half of the apartments at each property as being reserved for tenants making up to 80% of the area median income and at least 90% of the apartments being set aside for tenants earning up to 140% of the area median income. For one person, 80% of the area median income is about $49,600 a year, according to the federal government.

Attorneys representing the previous property owners and the finance corporations did not respond to requests to interview their clients to discuss the deals.

The Edcouch and La Villa corporations stand to collect fees in exchange for relatively little work in lending their public status to the complexes. The two cities are home to fewer than 6,000 residents combined — a small tax base. Officials in both cities created their housing finance corporations in October, state records show.

**RELATED:** How a town miles away could take properties off Hill Country tax rolls

The two are part of a growing trend of government agencies being formed by officials in small cities and counties across the state to cut deals for properties far outside their jurisdictions, including corporations in Cameron and Maverick counties and the cities of Pleasanton and Pecos. The distant agencies have acquired about two dozen properties in San Antonio and the Hill Country.

The corporations typically lease the complexes to the previous owners under contracts that can last up to 99 years. It's an attractive arrangement to developers facing sluggish rent growth, fluctuating interest rates and higher labor and insurance costs, allowing them to save millions in taxes.

## Legislative action

The flurry of activity has sparked lawmakers to introduce bills aimed at changing the rules governing the housing nonprofits.

Rep. Gary Gates sponsored House Bill 21, which would limit the agencies' geographic purview to try to keep them from acquiring distant properties, set certain low-income levels for the housing provided in exchange for the tax exemptions and invest a percentage of the property's value in renovations, among other proposals. The bill is pending in a committee. The Senate version, Senate Bill 867, sponsored by Sen. Paul Bettencourt, includes similar measures and is being scheduled for public hearing.

Another bill, House Bill 1585 sponsored by Rep. Cecil Bell, also would restrict where the corporations can buy properties and is making its way through the relevant committees.

Gates and Rep. J.M. Lozano asked Attorney General Ken Paxton to weigh in on the matter, but Paxton's office declined to issue an opinion. Last month, Williamson County sued the Cameron County Housing Finance Corp., alleging that it violated state law in seeking to remove two complexes from the tax rolls.

The Bexar Appraisal District and other appraisal authorities have been awaiting potential legislative changes before officially taking the properties off the rolls.
April 16, 2025

 **Madison Iszler**
**REPORTER**

  

Madison Iszler covers real estate, retail, economic development, and other business topics for the San Antonio Express-News. You can reach her at madison.iszler@express-news.net

## MOST POPULAR

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Natalee Maxwell on behalf of Tammy Ardolf
Bar No. 90001536
nmaxwell@toase.com
Envelope ID: 101406643
Filing Code Description: Answer/Response
Filing Description: Plaintiff's First Amended Application for Temporary Injunction and Response to Defendant's Plea to the Jurisdiction
Status as of 5/29/2025 5:03 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jeffrey MTillotson | | jtillotson@tillotsonlaw.com | 5/29/2025 4:51:45 PM | SENT |
| Jonathan RPatton | | jpatton@tillotsonlaw.com | 5/29/2025 4:51:45 PM | SENT |
| Blake Stribling | 24070691 | bstribling@chasnoffmungia.com | 5/29/2025 4:51:45 PM | SENT |
| Kira Lytle | | klytle@tillotsonlaw.com | 5/29/2025 4:51:45 PM | SENT |
| Daniel Lecavalier | 24129028 | dlecavalier@chasnoffstribling.com | 5/29/2025 4:51:45 PM | SENT |
| Mollie Mallory | | mmallory@tillotsonlaw.com | 5/29/2025 4:51:45 PM | SENT |
| Kassi Yukevich | | kyukevich@tillotsonlaw.com | 5/29/2025 4:51:45 PM | SENT |
| Marc Cavazos | | mcavazos@toase.com | 5/29/2025 4:51:45 PM | SENT |
| Tammy Ardolf | | TARDOLF@TOASE.COM | 5/29/2025 4:51:45 PM | SENT |
| KATHRYN yukevich | | KYUKEVICH@TILLOTSONLAW.COM | 5/29/2025 4:51:45 PM | SENT |
| JAMES EVANS | | JEVANS@LSEJLAW.COM | 5/29/2025 4:51:45 PM | SENT |
| Sean Wallace | | swallace@tillotsonlaw.com | 5/29/2025 4:51:45 PM | SENT |
| Natalee Maxwell | | nmaxwell@toase.com | 5/29/2025 4:51:45 PM | SENT |
| Sara Babineaux | | sbabineaux@tillotsonlaw.com | 5/29/2025 4:51:45 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 102720196
Filing Code Description: Other Document
Filing Description: Correspondence with Court
Status as of 7/2/2025 4:45 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jeffrey MTillotson | | jtillotson@tillotsonlaw.com | 7/2/2025 4:39:56 PM | SENT |
| Kira Lytle | | klytle@tillotsonlaw.com | 7/2/2025 4:39:56 PM | SENT |
| TJP Service | | tillotsonjohnsonpatton@gmail.com | 7/2/2025 4:39:56 PM | SENT |
| Kassi Yukevich | | kyukevich@tillotsonlaw.com | 7/2/2025 4:39:56 PM | SENT |
| Amanda Reichek | | areichek@tillotsonlaw.com | 7/2/2025 4:39:56 PM | SENT |
| Devlin Browne | | dbrowne@tillotsonlaw.com | 7/2/2025 4:39:56 PM | SENT |
| Daniel J.Lecavalier | | dlecavalier@chasnoffstribling.com | 7/2/2025 4:39:56 PM | SENT |
| Blake W.Stribling | | bstribling@chasnoffstribling.com | 7/2/2025 4:39:56 PM | SENT |